Argued and submitted August 2, affirmed December 7, 2011, petition for review denied March 22, 2012 (351 Or 675)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY JAMES HOLCOMB,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF090151; A143619

268 P3d 684

Marc D. Brown argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael Salvas, Certified Law Student, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Senior Assistant Attorney General.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant, who was convicted of first-degree burglary after a bench trial, ORS 164.225, argues that the trial court erred in denying his motion for a judgment of acquittal on that charge. As explained below, we affirm.

We review the denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational factfinder could have inferred from the evidence the essential elements of first-degree burglary. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009).

Defendant was charged with first-degree burglary on the theory that he aided and abetted an accomplice, Bobbi Carson, in her entry into, and theft from, the victim Caldwell's residence. Defendant also was charged with second-degree burglary and first-degree theft on the theory that he aided and abetted Carson in her entry into, and theft from, Caldwell's detached garage that was located on a different portion of his property.

Carson had previously stayed at Caldwell's residence. On the evening of the crimes, defendant drove Carson to Caldwell's property. He first pulled the vehicle he was driving up to Caldwell's garage; Carson entered the garage and carried out various items, including a computer and a work light, which she loaded into the vehicle. Carson then had defendant drive to Caldwell's residence. Carson left the vehicle while defendant remained in the vehicle. Caldwell arrived home, saw defendant parked in the driveway, and asked him what he was doing there. Defendant responded that "Shannon" was in his residence visiting "her boss." Caldwell was alarmed because he did not know who Shannon was and because his elderly mother was alone in the residence. Caldwell entered the residence looking for the intruder. He found his mother asleep in her bed, and she indicated that she was not aware of an intruder. Caldwell returned to the driveway, where defendant remained in the vehicle. As Caldwell approached the vehicle again, Carson came around the end of the residence and greeted him, explaining that she was there to see a lady about a job.

Caldwell thought that was strange because it was 10:30 p.m. Caldwell then observed Carson dropping various items onto the driveway, and he realized that those were items that had been inside his residence. Caldwell confronted Carson, who denied that the property belonged to Caldwell. Carson then put some items into the vehicle through the passenger-side window. As that interaction unfolded, defendant became aware that Caldwell was accusing Carson of having stolen items from his residence.

Caldwell and Carson returned to the residence, where Caldwell checked through his belongings and tried to ascertain what was missing. Caldwell discovered that cash and various small items were missing or not where they belonged. Defendant remained in the vehicle. At some point during his dispute with Carson, Caldwell called the police. Before the police arrived, Carson went to the vehicle and had a brief conversation with defendant, who then left in the vehicle.

Shortly after defendant left, Officer Dunlap arrived to investigate Caldwell's complaint, and Dunlap was able to recover some of the property that had been dropped outside the residence. He arrested Carson and, as he was transporting her to jail, received information that the vehicle in which defendant had left had been recovered by other officers. The following day, Caldwell was able to recover several large items from the vehicle that had been stolen from the garage; no items stolen from the residence were recovered. Caldwell had previously allowed Carson to store clothing in the garage. Carson's clothing was still in the garage, but numerous other items were missing.

Caldwell identified defendant as the person who had driven the vehicle from his property, and, after defendant was arrested, Dunlap interviewed him at the jail. During that interview, defendant told Dunlap that he had driven Carson to Caldwell's residence, that he had not seen anything happen there, that he had never entered the residence or the garage, that he had not seen anyone load items into the vehicle, and that he had left the scene because Carson had told him to leave. He said that he had abandoned the vehicle

(which was later determined to have been stolen) because he knew that he was not supposed to be driving.

At the close of the state's case, defendant moved for a judgment of acquittal:

"[T]he state's theory is that my client, Mr. Holcomb, aided and abetted a burglary and a theft that occurred with Bobbi Carson performing these acts, and there's no evidence that my client is connected to that burglary.

"Well, obviously he's there in a car and obviously he left in a car and it appears that there were some items that didn't belong to him that were in the car, but other than that, there's not sufficient evidence to show that he was knowledgeable about any crime that Bobbi Carson was committing[.]"

The trial court denied defendant's motion.

Defendant then testified in his own defense. He indicated that, when the crimes occurred, he was extremely intoxicated and hallucinating. He recalled that Carson had told him she needed to retrieve clothing that she had stored in Caldwell's garage. He first drove to the garage, where Carson loaded items into the vehicle. Defendant testified that Carson then told him that she wanted to visit her "sick boss," and had him drive to the residence. He remained in the car. He recalled that he had seen Carson dropping items onto the driveway and that he had overheard Caldwell telling Carson that he would "call the cops if she didn't give it back." He testified that he said to Carson, "Bobbi, if you took something, give it back," to which Carson responded that she had not taken anything. He testified that Carson later told him to leave, knowing that he had an outstanding warrant and not wanting him to be there when the police arrived. Defendant left but ran out of gas, after which he abandoned the vehicle and walked to town, avoiding the main roads because he did not want to be spotted by the police. On cross-examination, when asked about his earlier denial that he had seen anyone put any items into the vehicle, defendant stated that he was thinking about the residence, and not the earlier stop at the garage, when he made that statement. He further indicated that the victim was mistaken about Carson having put items into the vehicle while they were at the residence.

The trial court, as trier of fact, found defendant not guilty of the two charges relating to the garage but guilty of the charge relating to the residence. The court stated:

"Okay, Mr. Holcomb, I'm going to take what you said with regards to the garage up above, that you had no idea that the things that were being taken out of there were not hers, because there's no other evidence that contradicts that, and so I'm finding you not guilty of Burglary in the Second Degree.

"However, you were put on notice that there was allegations by the owner that she was involved in taking things that didn't belong to her out of the house, and you then left at her direction with things that belonged to Mr. Caldwell. * * *

"I'm finding you guilty of Count 1, which is the burglary, and the reason for my finding you not guilty of Count 3 is we don't have, once again, evidence of your knowing that the property that was taken out of the [garage] was a theft, but the property out of the house most assuredly was, but we don't have any evidence that it was $750 or more."

In sum, the court found defendant guilty of the first-degree burglary charge involving aiding and abetting Carson's unlawful entry into Caldwell's residence but acquitted defendant on the burglary and theft charges relating to Carson's unlawful entry into Caldwell's garage on the ground that there was no evidence that he knew that she was taking things from the garage that were not hers.

On appeal, defendant makes two arguments. First, defendant argues that, viewed in the light most favorable to the state, the evidence merely showed that defendant drove away with stolen items after Carson had completed her burglary but, because a burglary is completed at the time that a person enters a building with intent to commit a crime, actions that occur after the crime has been completed cannot constitute aiding and abetting. *See, e.g., State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) (noting that, even though actions after the commission of a crime cannot alone constitute aiding and abetting, they may be used as evidence that earlier activities were aiding and abetting). Defendant asserts that it could not be inferred

from his "mere presence" at the scene of the crime that he was aiding and abetting Carson. *State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990). Second, he argues that there was insufficient evidence that he knew that items taken from Caldwell's residence were in the vehicle when he drove away. The latter argument requires little discussion: Although there was conflicting evidence on the point, a reasonable inference could be drawn from the victim's testimony that Carson put items taken from the residence into the vehicle while defendant was inside the vehicle. Because there was undisputed evidence that defendant was aware that Caldwell was accusing Carson of having stolen items from the residence at that point in time, a reasonable factfinder could infer that defendant knew that the items Carson put into the vehicle had been taken from the residence.

To paraphrase defendant's first argument: there is no evidence that he brought Carson to the residence knowing that she intended to enter unlawfully and take Caldwell's property; he was "merely present" while she did so, and his act in leaving with stolen property cannot, in itself, be aiding and abetting, because it occurred after the burglary had been completed. *See, e.g., State v. Wilson*, 240 Or App 475, 248 P3d 10 (2011) (The defendant's act of disposing of items that a codefendant had stolen from a convenience store did "not constitute aiding or abetting [the codefendant's] theft because, by the time the crates were burned or otherwise disposed of at the quarry, [the codefendant] had already *completed* the commission of the predicate offense." (Emphasis in original.)).

The state responds that, in this case, defendant did more than simply cover up an already-completed crime. The state notes that, although Carson had already entered and removed the items from the residence, "[n]ot until defendant drove away was the property completely removed from Caldwell's possession." The state reasons that defendant's act of driving away with the stolen property "was an integral part of the burglary itself," rather than the type of after-the-fact assistance that is not cognizable under Oregon law.

To the extent that the state suggests that the *burglary* was not completed until defendant drove away with the property, we disagree. As defendant correctly notes, first-degree burglary involves an unlawful entry into a dwelling with the intent to commit a crime therein. ORS 164.225; ORS 164.215. That crime was complete when Carson entered Caldwell's residence with the intent of stealing property inside the residence. However, the state also argues, and defendant acknowledges, that a defendant's actions after a crime is completed can provide circumstantial evidence that his or her *earlier* actions constituted aiding and abetting. *See Moriarty*, 87 Or App at 468 n 1 (so noting). In *Moriarty*, the defendant argued that there was insufficient evidence to support an aiding-and-abetting jury instruction that he had assisted his wife in murdering the victim. We noted that, although there was no direct evidence of aiding and abetting, there was circumstantial evidence that the defendant acted in concert with his wife both before and after the crime:

> "Both were present at the scene of the crime during the murder or shortly thereafter. Defendant testified that when [his wife] pulled the gun he was scared and ran out of the garage but, by his own testimony, rather than fleeing or seeking help from his friend who arrived at the scene right after the shooting he sent him away and re-entered the garage. Both had had disputes with the victim which could constitute a motive to kill him. Defendant had threatened to kill the victim. It is uncontradicted that defendant and [his wife] worked together in cleaning up traces of the crime, disposing of the body and concealing the crime for approximately ten years."

*Id.* at 469.

In *Moriarty*, we relied on *State v. Hightower*, 17 Or App 112, 520 P2d 470 (1974), which involved a burglary charge, and thus has greater commonality with the present case. In *Hightower*, the defendant was charged with aiding and abetting a burglary by entering a building with intent to commit theft "and while in said building did use a dangerous weapon." *Id.* at 113. The defendant argued that he was entitled to a judgment of acquittal because he could not be held responsible for his accomplice's use of a knife during the crime. The defendant and the accomplice had entered a

building intending to steal items, and the owner had interrupted them as they were doing so. The accomplice stabbed the owner with a knife while the defendant hid in a restroom. *Id.* at 114. The defendant and the accomplice left together, and they went to the defendant's apartment, where they divided the proceeds. We concluded:

> "Defendant, in fleeing the cafe, took the money he previously found. After reaching his apartment he divided this money with Sage. Sage committed first degree burglary in that he used the knife. Defendant aided and abetted Sage's crime by taking the proceeds of the burglary from the store. As such, he did more than merely acquiesce in Sage's commission of the crime—he actively aided him. Under ORS 161.155 defendant's actions in aiding Sage make him liable for the crime Sage committed."

*Id.* at 115-16 (citations omitted); *cf. State v. Brake*, 99 Or 310, 315, 195 P 583 (1921) (where "the defendant and the accomplice were not only together [at or around the time of the burglary], but had the fruits of the crime in their possession," there was sufficient corroboration of the accomplice's testimony to support a burglary conviction); *State v. Tilford*, 41 Or App 433, 437-38, 599 P2d 1144 (1979) (evidence that the defendant was in constructive possession of proceeds after the fact supported conviction for first-degree burglary).

In each of the cases described above there was evidence that the defendant had, in fact, entered into the burglarized building. However, although evidence that a defendant actually entered the building may strengthen the inference that he or she collaborated in the crime, it is not always necessary. In *State v. Boone*, 213 Or App 242, 245, 160 P3d 994, *modified on recons*, 215 Or App 428, 169 P3d 1274 (2007), the defendant was charged, among other crimes, with several counts of burglary based on the theory that he aided and abetted Monk in burglarizing four trailers. Monk testified that he broke into the trailers and stole items by himself. The defendant asserted that he had been with Monk that evening but had been shopping when the crimes occurred. He acknowledged, however, that Monk had transported stolen goods in his car and that he had helped Monk remove identifying marks from some of the stolen items; additionally, some of the stolen goods were found at the defendant's residence.

*Id.* We concluded that that evidence was sufficient to create a jury question as to aid-and-abet liability for burglary:

> "Monk testified, and defendant admitted to police, that defendant was present with Monk near the scene of the crimes on the day they were committed. Defendant admitted that he knew that Monk was breaking into the trailers while defendant was at that location, and he described exactly how the trailers were broken into. Defendant also admitted that he owned the vehicle used to transport the stolen items from the scene and that he helped sanitize the items for fencing. *See State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) ('Even though actions after the commission of a crime cannot alone constitute aiding or abetting, they may be used as evidence that earlier activities were aiding and abetting.' (Emphasis in original; citations omitted.)); *see also* [*State v.*] *Jackson,* 64 Or App [667, 669, 669 P2d 826 (1983)] (evidence placing defendant in escape car with stolen money was sufficient to hold him liable for robbery committed by passenger despite defendant's professed ignorance of offense)."

Defendant asserts that *Boone* is distinguishable, because, according to defendant, the defendant in that case "knew" that Monk was breaking into the trailers, used his own vehicle to carry away the stolen items, and helped sanitize the items. Here, defendant asserts, there was no evidence that he knew that Carson was burglarizing the residence, and, he asserts, no evidence that he assisted in the disposal of the stolen items.

We disagree with defendant's characterization of the evidence. In this case, as in *Boone*, defendant was in the vicinity when the accomplice made the unlawful entry. In this case, as in *Boone*, evidence supports an inference that defendant transported stolen items away from the scene. We do not consider it a particularly meaningful distinction that the defendant in *Boone* transported items in his own car, whereas in this case, defendant transported items in a stolen car. Although there was no evidence in this case that defendant prepared the stolen items to be fenced, as was the circumstance in *Boone*, other evidence was pertinent to defendant's participation in the crime. The evidence supports an inference that defendant left the scene of the crime when Carson told him the police were coming, and after Carson had put items in the car. It is undisputed that defendant

abandoned the vehicle and attempted to elude the police as he returned to town. Although defendant abandoned some of the larger items that had been stolen from Caldwell's garage when he abandoned the vehicle, various other items that had been stolen were never recovered.

In sum, the following evidence, viewed in the light most favorable to the state, supported the inference that defendant knew that Carson was burglarizing Caldwell's residence: (1) defendant drove Carson to the residence and waited there for her while she entered the dwelling; (2) Carson brought items out of the residence and put them into the vehicle where defendant was waiting; (3) defendant heard Caldwell accuse Carson of taking items from his residence; (4) after learning that the police were on the way, defendant left in the vehicle with items that Carson had put in the car; (5) defendant abandoned the vehicle and attempted to avoid contact with the police after the crime, and (6) defendant made inconsistent statements about whether he knew that items were loaded into the vehicle—he stated in one instance that he had not seen any items loaded into the vehicle, and in another instance, he stated that Carson had put items from the garage into the vehicle.

Defendant argues that the "only inference" that can be drawn from the evidence is that he was unaware of the crime because the evidence that he stayed at the scene for a significant period of time after Caldwell had accused Carson of taking items demonstrated that he was "merely present," not acting as an accomplice. He asserts, in addition, that his action in leaving the scene before the police arrived is fully explained by his testimony that he was trying to avoid being apprehended on an outstanding warrant. Those arguments, however, are for a trier of fact. The issue is whether there was sufficient evidence of aiding and abetting for a trier of fact to weigh competing inferences that could be drawn from the evidence. In light of the evidence summarized in the preceding paragraph, we conclude that there was.

The trial court did not err in denying defendant's motion for a judgment of acquittal on the first-degree burglary charge.

Affirmed.