Argued and submitted August 31, 2011, reversed and remanded
November 7, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA MELVIN BARBOE,
*Defendant-Appellant.*

Umatilla County Circuit Court
CRH080518; A143495

290 P3d 833

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul L. Smith, Attorney-in-Charge, Collateral Remedies Appeals, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Senior Assistant Attorney General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, J., *vice* Rosenblum, S. J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction, following a bench trial, for fraudulent use of a credit card, ORS 165.055.[1] He assigns error to his conviction under an aid-and-abet *after-the-fact* theory of criminal liability, arguing that the trial court erred in convicting him on the basis of conduct that occurred after the crime had been completed. The state concedes that the trial court "articulated an after-the-fact aid-and-abet theory when it explained its verdict" and that Oregon does not recognize such a theory, but contends that defendant failed to preserve that argument for review. Further, the state contends that the claimed error is not plain, and, even if it were, we should not exercise our discretion to correct it. We agree with the state that defendant failed to preserve his argument below, but conclude that, in convicting defendant under an improper theory of liability, the trial court committed legal error apparent on the face of the record. For the reasons set forth below, we exercise our discretion to correct that error, and, in so doing, we reverse defendant's conviction and remand for a new trial.

On appeal from a judgment of conviction, we recount the underlying facts in the light most favorable to the state. *State v. Sundberg*, 349 Or 608, 610, 247 P3d 1213 (2011). On January 4, 2007, defendant was working as a waiter at The Pheasant Café & Lounge (The Pheasant). Some days earlier, Chad Mercer had stolen a credit card from Randall Muller, and Muller had not yet noticed that the card was missing. While defendant was waiting tables on January 4, Mercer and defendant's step-cousin, Samantha, entered The Pheasant with another woman and accrued a $32.65 bill at a table serviced by defendant. Mercer paid the bill using

---

[1] ORS 165.055 was amended after the conduct at issue in this case occurred. Or Laws 2009, ch 16, § 7. Because the amendment is not relevant to our analysis, we refer to the current version of ORS 165.055, which provides, in relevant part:

"(1) A person commits the crime of fraudulent use of a credit card if, with intent to injure or defraud, the person uses a credit card for the purpose of obtaining property or services with knowledge that:

"(a) The card is stolen or forged;

"(b) The card has been revoked or canceled; or

"(c) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit card is issued."

the stolen credit card, left defendant a $75 tip, and signed the credit-card receipt using Muller's name rather than his own. Contrary to the restaurant's policies, defendant did not check the signature on the credit card and receipt, nor did he verify the cardholder's identification. Defendant then removed the $75 tip from the till in cash, leaving the restaurant short of cash the next day.

Soon thereafter, Muller's wife noticed a $107.65 charge from The Pheasant on an online bank statement and contacted Muller, who had been out of town and unable to visit the restaurant. After discovering that his credit card was in fact missing, Muller called the police. On January 6, Officer Roberts went to The Pheasant and spoke with defendant. Defendant told Roberts that he distinctly remembered receiving the large tip, as he was "excited" about it, but he initially denied knowing either Mercer or Samantha. After further questioning, defendant told Roberts that he thought "that one of the females' names was Samantha," but stated that he did not know her last name and "didn't know any information about the other people." He denied having any knowledge that the credit card was stolen.

Over one year later, on March 12, 2008, Roberts again spoke with defendant regarding the events of January 4, 2007. At that time, defendant maintained his earlier assertion that he did not know that the credit card was stolen when he ran it and received the $75 tip, but openly admitted that Samantha was a relative, stating that he did not think much of the $75 tip because "[i]t was a family thing[,]" *i.e.*, "it's not normal but, I mean, somebody you know comes in, they're going to tip you good." Defendant confirmed that Mercer was the person who physically handed him the credit card, and told Roberts that he knew Mercer. However, defendant later testified that he was "never even introduced" to and did not know Mercer on January 4, 2007, but rather got to know him during the intervening year. Roberts placed defendant under arrest.

Defendant was charged with one count of second-degree theft, ORS 164.045 (2007), *amended by* Oregon Laws 2009, chapter 11, section 12, and Oregon Laws 2009, chapter 16, section 2, and one count of fraudulent use of a credit

card, ORS 165.055. He elected to try the case to the court and, at the close of the state's case, moved for judgment of acquittal on both charges on the ground that the state had failed to produce sufficient evidence that he "had knowledge that the card was stolen at the time of the transaction." The trial court denied the motion and ultimately acquitted defendant of the second-degree theft charge but convicted him of fraudulent use of a credit card. In rendering that verdict, the court explained that it found defendant guilty of fraudulent use of a credit card under an aid-and-abet theory because he knowingly failed to disclose Samantha's or Mercer's identities to the police after the crime had been committed—thereby aiding Mercer in escaping arrest. Specifically, in announcing its verdict, the trial court stated:

> "Under ORS 161.155, a person is liable as the principal for aiding and abetting, planning or committing a crime. Under *State v. Burney*, 191 Or App 227[, 82 P3d 164] (2003), in that case the Court noted the aid and abet, proof of intent, was to promote or further the commission of a crime under ORS 161.155. Further, the commission of a crime, in that case, essentially appears to be the natural evolution of an accessory after the fact.
>
> "* * * * *
>
> "Even [*sic*] for the moment that our Defendant here today did not know Mercer—and I'm finding that Mercer did pass the stolen credit card to him—even assuming that the Defendant did not have a legal duty to follow the procedures and identify the credit card holder, and then, *when the Defendant learned of the theft and misuse of the credit card and having gained from that theft, knowingly failed then to disclose the information to the police about the case, that was done in the furtherance of the crime, and thus the Defendant aided and abetted the crime of fraudulent use* * * *.
>
> "Therefore, the Defendant being motivated by his own self-interest in having received the $75 and protecting his family's participation in the theft, *took the step to aid the offender, Mercer in this case, in escaping arrest.* I believe that that is primarily used for the fraudulent use of the credit card. So as to count one, the theft, I find you not guilty; and as to count two, for the purposes and reasons

just stated, I find you guilty of the fraudulent use of the credit card."

(Emphasis added.)

Shortly after announcing its verdict, the trial court sentenced defendant and provided both parties with a proposed judgment. After stating that he would "initial and sign it and go ahead and make distribution," the trial judge asked, "Outside of distribution of the copies, anything else today?" The parties raised nothing further in response.

On appeal, defendant contends that the trial court erred in finding him "guilty of something that is not a crime" when it convicted him of fraudulent use of a credit card based on an improper aid-and-abet after-the-fact theory of liability. In addition, he asserts that his argument regarding the trial court's legally infirm verdict was preserved below as required by ORAP 5.45(1)[2] and, should we conclude otherwise, alternatively argues that the trial court's legal error constitutes plain error and merits discretionary correction.

As noted, the state concedes that Oregon does not recognize an aid-and-abet after-the-fact theory of criminal liability, and further concedes that "the trial court in this case articulated an after-the-fact aid-and-abet theory when it explained its verdict." However, the state argues that defendant's assignment of error is unpreserved, as defendant failed to raise it in his motion for judgment of acquittal, failed to raise it during closing argument, and failed to "*somehow* alert[ ] the judge to the legal inadequacy of [the aid-and-abet after-the-fact] theory * * *." (Emphasis in original.) The state further argues that, notwithstanding the trial court's "mistaken reasoning," the error is not plain and, even if it were, we should not exercise our discretion to correct it. As noted, we agree with the state that defendant's argument was not preserved below; however, as to the state's latter arguments, we disagree and exercise our discretion to address the trial court's verdict as plain error.[3]

---

[2] ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the record."

[3] We briefly dispose of the state's preliminary argument that the trial court's "conclu[sion] that defendant could be convicted of fraudulent use of a credit card

Defendant contends that his assignment of error was preserved below when, during closing argument, defense counsel stated:

> "And moreover, [defendant is] under no obligation to discuss the matter with the officer at all. He's got a Fifth Amendment right not to incriminate himself. *It would be inappropriate for the Court to convict him on some aiding and abetting theory based on his unwillingness to be entirely forthright with the officer at the first conversation."*

(Emphasis added.) In support of that contention, defendant analogizes closing arguments in the context of bench trials to jury-instruction arguments, citing, *inter alia, State v. Andrews,* 174 Or App 354, 358-59, 27 P3d 137 (2001), *abrogated in part on other grounds by State v. Rutley,* 202 Or App 639, 644-45, 123 P3d 334 (2005), *aff'd in part and rev'd in part,* 343 Or 368, 171 P3d 361 (2007). In *Andrews,* this court held that, where a defendant in a bench trial argues that the state is required to prove a particular element of the charged offense, and the trial court explicitly rules to the contrary, the issue is reviewable on appeal much like a "ruling on an exception to an instruction in a jury trial." 174 Or App at 358; *see also State v. Clum,* 216 Or App 1, 7-9, 8 n 5, 171 P3d 980 (2007) (applying the reasoning set forth in *Andrews* and concluding that "the ruling to which defendant assigns error is directly analogous to a ruling on an exception to an instruction in a jury trial"). However, defendant's closing argument did not raise the issue that he now asserts on appeal—namely, that, as a matter of law, the

---

on the theory of aiding and abetting after the fact" is not properly the subject of an assignment of error under ORAP 5.45. The state contends that defendant is not entitled to assign error to the *basis* for the trial court's verdict, asserting that "[a] court's conclusion is not subject to attack, * * * except as it is actually related to a ruling by the court." That argument is unavailing. Here, the trial court's conclusion as to the applicable law was directly related to the verdict itself, and error may properly be assigned to both an erroneous verdict and error in identifying the elements that must be proved in order to convict a defendant. *See, e.g., State v. Wilson,* 240 Or App 475, 483-84, 248 P3d 10 (2011) (defendant properly preserved contention that trial court "convicted him on a theory of culpability that is legally erroneous"); *cf. State v. Hull,* 286 Or 511, 517, 595 P2d 1240 (1979) ("In [a bench trial], there are different ways in which the record could show the basis of the court's conclusion so as not to foreclose review of this issue on appeal. * * * We prescribe no formal findings; what matters is only that an appellate court can perform its function on the issue whether [the case] was decided on the right legal premises.").

trial court could not convict him on an aid-and-abet after-the-fact theory. Instead, in his closing argument, defendant contended only that the evidence that he was unwilling to be forthright with Roberts during their first conversation was insufficient to convict him on that theory.

Moreover, when the trial court did erroneously rely upon an "aiding and abetting theory based on [defendant's] unwillingness to be entirely forthright with the officer[,]" defendant remained silent. Further, defendant raised no objection after the trial court distributed the proposed judgment and asked, "Outside of distribution of the copies, anything else today?" Given that context, defendant's statement during closing argument is insufficient to preserve for appeal his argument as to the trial court's reliance on an improper theory of liability in rendering its verdict. *See Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977) ("A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to permit the trial judge a chance to consider the legal contention *or to correct an error already made*." (Emphasis added.)); *cf. State v. Wilson*, 240 Or App 475, 484-85, 248 P3d 10 (2011) (finding that the defendant's argument that the court in a bench trial relied upon an improper theory of liability was preserved after, "in colloquy during closing argument, the trial court advanced—and *defense counsel patently disputed*—the [erroneous theory of liability]" (citation omitted; emphasis added)).

As noted, defendant alternatively contends that the error is plain and asks that we exercise our discretion to correct it. Although we generally will not consider an unpreserved issue on appeal, *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000), we may nevertheless review an unpreserved assignment of error as plain error under ORAP 5.45(1), provided that (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the face of the record" such that we "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Further, even where those conditions are satisfied, we must still affirmatively exercise

our discretion to reach and correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

The trial court's verdict convicting defendant based on a theory of criminal liability that does not exist in Oregon presents an error of law, and we need not look beyond the record or choose between competing inferences to identify that error. ORS 161.155, the aid-and-abet statute, plainly applies only to conduct prior to or during the commission of a crime. The statute provides, in relevant part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person *in planning or committing the crime*[.]"

(Emphasis added.) *See State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939) ("The words 'aid and abet' * * * manifestly have reference to some word or act of encouragement or assistance in the commission of the offense, and *not to something done after the crime is complete*." (Emphasis added.)); *State v. Holcomb*, 246 Or App 687, 693, 268 P3d 684 (2011), *rev den*, 351 Or 675 (2012) ("[A]fter-the-fact assistance * * * is not cognizable under Oregon law."); *Wilson*, 240 Or App at 484 ("[A]ccomplice liability under ORS 161.155(2)(b) cannot be based on 'aiding and abetting after the fact.'"); *State v. Moriarty*, 87 Or App 465, 468 n 1, 742 P2d 704, *rev den*, 304 Or 547 (1987) ("[A]ctions *after* the commission of a crime cannot alone constitute aiding or abetting[.]" (Emphasis in original.)).

The state disputes only *Brown*'s second prerequisite to plain error review, arguing that "it is not 'obvious' that the court convicted defendant solely on a flawed understanding of the law[.]" That is, the state asserts that, although the trial court erroneously relied upon an aid-and-abet after-the-fact theory in convicting defendant, a reasonable dispute exists as to whether the court "also believe[d] that

defendant had facilitated the fraudulent credit-card use as it happened." We reject that argument in the context of our plain error analysis,[4] noting that, regardless of speculation as to what the trial court may have "believe[d]," the record unambiguously reflects—as set forth above—that the trial court in fact convicted defendant for aiding Mercer in escaping arrest after the crime was complete, *i.e.*, "when the Defendant learned of the theft and misuse of the credit card." Accordingly, the trial court's legal error in convicting defendant of aiding and abetting Mercer after the fact is "obvious, not reasonably in dispute." *Brown*, 310 Or at 355.

We next determine whether to exercise our discretion to reach and correct the error. *See Ailes*, 312 Or at 382. In so doing, we employ the "utmost caution" given the "strong policies" underlying the preservation requirement. *Id.* Considerations relevant to that determination include

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue * * *."

*Id.* at 382 n 6. Additional considerations include whether defendant encouraged the error in some way, whether defendant strategically chose not to object to the error, and whether or not the error could have been remedied were it raised below. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007).

First and foremost, the gravity of the error militates in favor of discretionary review. As defendant succinctly

---

[4] As we note below in reaching our disposition, the state's argument is not without merit; it is simply inapplicable in this context. Here, we must ensure that the legal error—that is, that the trial court convicted defendant using an improper legal theory—is obvious. *Brown*, 310 Or at 355. The face of the record is such that no reasonable dispute exists, and, as noted, the state concedes that the trial court relied "at least in part" on a "mistaken" aid-and-abet after-the-fact theory of liability in rendering its verdict. The state's argument set forth above more appropriately pertains to our discussion below regarding whether material facts have not yet been decided such that a new trial is warranted in lieu of outright reversal.

points out, he presently "stands convicted of something that is not a crime." As we recently explained in *State v. Reynolds*, 250 Or App 516, 522-23, 280 P3d 1046 (2012), a defendant "has a strong interest in having a criminal record that accurately reflects the nature and extent of [his or her] conduct." *Id.* at 522 (citing additional cases supporting that proposition). Conversely, the state has no competing interest in seeing the law applied incorrectly to sustain a conviction. *See id.* at 524 ("[W]e cannot fathom any reason why the state would have an interest in upholding the erroneous conviction."); *State v. Decamp*, 252 Or App 177, 179, 285 P3d 1130 (2012) ("[T]he state has no interest in sustaining a constitutionally infirm sentence." (Citation omitted.)). In fact, the state's concession that "the trial court here appears to have relied, at least in part, on an after-the-fact theory of aiding and abetting" weighs in favor of the exercise of our discretion. *See State v. Jones*, 129 Or App 413, 416-17, 879 P2d 881 (1994) (factoring "the state's concession of error on [the relevant] legal point" into decision to reach the trial court's error as plain error). Finally, as noted, defense counsel's statement that "[i]t would be inappropriate for the Court to convict [defendant] on some aiding and abetting theory based on his unwillingness to be entirely forthright with the officer at the first conversation" tends to refute the notion that defendant encouraged or intentionally failed to object to the error. *See State v. Lovern*, 234 Or App 502, 511-12, 228 P3d 688 (2010) (insufficient objection for preservation purposes refuted contention that the defendant made a tactical choice not to raise the issue).

For the reasons set forth above, we conclude that the error merits correction and that doing so "will not subvert the judicial system's interest in requiring preservation of error." *State v. Inloes*, 239 Or App 49, 54, 243 P3d 862 (2010) (citations and internal quotation marks omitted). Accordingly, we affirmatively exercise our discretion to correct the trial court's plain error in "convict[ing] [defendant] of something that is not a crime."

We now turn to the remaining question of the appropriate disposition. Defendant asks that we reverse his conviction and remand for a new trial on the basis that he "was found guilty without the state proving * * * that he had

the intent necessary to commit fraudulent use of a credit car[d] *before* [or while] the crime was committed." (Emphasis in original.) The state in effect agrees with defendant's latter point, asserting (albeit while making a different argument)[5] that "the trial court did *not* find that the state had failed to prove that defendant aided and abetted the fraudulent credit-card use [before or] *as it occurred*." (Emphasis in original.) We have consistently held that, under such circumstances, *i.e.*, where factual issues pertinent to a material element of the crime remain unresolved, "the proper disposition is to reverse and remand for a new trial[.]" *State v. Schodrow*, 187 Or App 224, 232, 66 P3d 547 (2003) (citation omitted); *see also, e.g., Wilson*, 240 Or App at 489 (same); *Andrews*, 174 Or App at 366 (same); *State v. Jaha*, 118 Or App 497, 501, 848 P2d 622 (1993) (same).

Given its similarity to this case, *Wilson* is particularly instructive. There, the defendant was convicted of theft following a bench trial, and, as here, that conviction was based on an erroneous aid-and-abet after-the-fact theory of criminal liability. 240 Or App at 489. On appeal, we rejected the aid-and-abet after-the-fact theory, but noted that there was sufficient evidence from which a rational trier of fact could infer that the defendant had actually participated in the theft as it occurred. *Id.* at 483-89. Consequently, addressing the appropriate disposition of the matter, we stated:

> "[T]here is evidence on which, depending on the trial court's determination of (as yet) unresolved factual issues, the court could properly convict defendant of the charged offense. In that respect, this case is in a procedural posture directly analogous to that in *Andrews*. Accordingly, as in *Andrews*, we reverse and remand for further proceedings."

*Id.* at 489. *See Andrews*, 174 Or App at 366 ("[T]he case is in a posture in which the trial court convicted defendant without deciding a material element for which there was proof sufficient to withstand a motion for judgment of acquittal.

---

[5] To be clear, the state does not assert that defendant is entitled to a new trial; rather, it simply agrees with the premise that the trial court's verdict does not on its face dispose of the possibility that defendant aided or abetted in the commission of the crime *before or as it occurred* as required by ORS 161.155.

Given those circumstances, and as we have done previously, we reverse and remand for a new trial." (Citation omitted.)).

This case does not so neatly fit within the ambit of the precedent set forth above; that is, some measure of scrutiny is required in order to determine whether the rule articulated in *Andrews* and *Wilson* applies at all based on the face of the record and the trial court's findings of fact or lack thereof. As noted, in delivering its verdict, the trial court stated:

> "*Even [sic] for the moment* that our Defendant here today did not know Mercer—and I'm finding that Mercer did pass the stolen credit card to him—even assuming that the Defendant did not have a legal duty to follow the procedures and identify the credit card holder, and then, *when* the Defendant learned of the theft and misuse of the credit card and having gained from that theft, knowingly failed then to disclose the information to the police about the case, that was done in the furtherance of the crime, and thus the Defendant aided and abetted the crime of fraudulent use * * *.

> "Therefore, the Defendant being motivated by his own self-interest in having received the $75 and protecting his family's participation in the theft, took the step to aid the offender, Mercer in this case, in escaping arrest."

(Emphasis added.) At the outset, we acknowledge that the trial court's remarks present close questions as to the findings that it actually made. Had the trial court unambiguously found that defendant did not know Mercer on January 4, 2007, rather than assuming as much for purposes of applying an erroneous legal premise, or had the court specified when, exactly, defendant "learned of the theft and misuse of the credit card" (*i.e.*, after speaking with Roberts), we would be bound to reverse defendant's conviction outright. *See, e.g., State v. Gonzalez*, 188 Or App 430, 431, 431 n 1, 71 P3d 573 (2003) (reversing the defendant's conviction where its basis was legally infirm while acknowledging cases reversing and remanding for a new trial "where [the] trial court did not decide [a] material element and there was proof sufficient to withstand a motion for judgment of acquittal"); *see also State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) ("It is familiar doctrine that we are bound by a trial court's

findings of fact, if there is evidence in the record to support them." (Citations omitted.)). Moreover, where the trial court does not make findings of fact on all of the issues and there is evidence based upon which particular factual issues could be decided in more than one way, "we will presume that the facts were decided in a manner consistent with the [trial court's] ultimate conclusion[.]" *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968); *accord, e.g., State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010).

However, here the trial court's verdict indicates that it did not make findings of fact pertaining to whether defendant aided and abetted before or during the commission of the crime as required by ORS 161.155. Rather, the trial court merely *assumed for the sake of argument* that the evidence did not support conviction under a proper interpretation of ORS 161.155. Consequently, because the trial court ultimately convicted defendant *only* under the erroneous theory and predicate findings of fact, we need not apply the rule set forth in *Ball* given that the undecided facts were not necessary to the trial court's ultimate disposition. *Ball*, 250 Or at 487; *see also State v. Woodall*, 181 Or App 213, 221 n 2, 45 P3d 484 (2002) ("[G]iven the fact that the trial court never addressed the [critical issue], we cannot assume, as in *Ball v. Gladden*, that the trial court implicitly resolved that critical factual issue in the state's favor." (Citations omitted.)).

Given the trial court's ambiguity as to its findings of fact and, more importantly, given that it did not make concrete findings of fact regarding defendant's knowledge before or during the commission of the charged offense, we follow the course of action prescribed by *Wilson*. Accordingly, because a factual question as to defendant's knowledge *at the time of the fraudulent transaction* (a material element of the crime of fraudulent use of a credit card) remains unresolved, and the evidence pertaining to that question is sufficient to withstand a motion for judgment of acquittal,[6]

---

[6] Although the state devotes a substantial portion of its brief to the sufficiency of the evidence, we need not discuss it in detail. Defendant moved for judgment of acquittal on both counts based on sufficiency of the evidence, that motion was denied, and, in any event, we are persuaded that a rational trier of fact could have

we reverse defendant's conviction and remand for a new trial on the charge of fraudulent use of a credit card.

Reversed and remanded.

---

found beyond a reasonable doubt that defendant knew that the credit card was stolen at the time that the fraudulent transaction took place.