724 June 17, 2026 No. 559

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KATIE LYNN VINCENT,
*Defendant-Appellant.*

Harney County Circuit Court
23CR62994, 22CR11163; A184318 (Control), A184319

Robert S. Raschio, Judge.

Submitted December 4, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed.

## O'CONNOR, J.

Defendant appeals from a judgment of conviction following a bench trial for misdemeanor failure to make an annual report as a sex offender, ORS 163A.040(1)(f). In a combined argument, defendant raises two assignments of error. First, defendant argues that the trial court erred when it denied defendant's motion for judgment of acquittal, which was made during closing argument when she argued that the evidence did not establish the elements of the offense. Second, defendant argues that the trial court erred when it applied an incorrect legal standard to reach its verdict. The overarching legal question is whether the state satisfies its burden to prove that a defendant committed a voluntary act or omission, as required by ORS 161.095(1), when failing to make an annual report as a sex offender if the defendant was physically unable to report when the reporting window closed. We conclude that the answer is no, and we reverse.

We address only defendant's second assignment of error because it is dispositive. In construing the applicable legal framework, the trial court ruled that a person's voluntary failure to report at the beginning of the 20-day annual sex-offender registry reporting window[1] satisfies the state's burden even when the person becomes incapacitated because of an unforeseen event for the last few days of the reporting window. That is incorrect. The state has the burden to prove that a defendant's voluntary act or omission caused their failure to report at the time the offense occurs, which is when the annual reporting window closes, at the end of the tenth day after the person's birthday. The trial court thus erred when it applied an incorrect legal standard to reach its verdict.

In issuing its verdict, the trial court found as fact that defendant was physically unable to report for the last

---

[1] The legislature might have intended to establish a 21-day reporting window: the person's birthday and 10 days before and after their birthday. Here, however, the parties agree that there is a 20-day window to report created by the statute. The trial court used that 20-day window in making its ruling, and for the purposes of this opinion, we accept that a person has a 20-day window to report. *See also State v. Massei*, 247 Or App 30, 33, 268 P3d 774 (2011) (where the defendant's birthday was September 4, describing the reporting window as ending at the end of the day on September 14, the tenth day after the defendant's birthday).

eight days of the reporting window, including when the reporting window closed due to emergency surgery. Under a correct understanding of the law, that finding required a not-guilty verdict because defendant's failure to report did not result from "a voluntary act or * * * omission," as required for criminal liability under ORS 161.095(1). We thus reverse defendant's conviction for misdemeanor failure to make an annual report as a sex offender.

## STANDARD OF REVIEW

In a bench trial, an argument that the trial court applied an incorrect legal standard in reaching its verdict "is akin to an assertion that a trial court delivered an incorrect jury instruction." *State v. Zamora-Skaar*, 308 Or App 337, 353, 480 P3d 1034 (2020). We review "whether the court instructed itself incorrectly as to the law[.]" *Id*. The trial court made express factual findings, and, on appeal, the parties agree that the relevant facts are those that the court found. We thus state the facts consistent with trial court's factual findings.

## STATEMENT OF FACTS

Defendant was convicted of a crime in Washington State that requires her to register as a sex offender in Washington. She moved to Oregon more than 10 years prior to the trial in this case, and she must register as a sex offender in Oregon because she has to register in Washington. *See* ORS 163A.020(6)(b) (providing that "a person convicted in another United States court of a crime" that requires "the person * * * to register as a sex offender in that court's jurisdiction, * * * regardless of whether the crime would constitute a sex crime in [Oregon]," must register as a sex offender in Oregon). As relevant here, defendant must report in person to "the Department of State Police, a city police department or a county sheriff's office, in the county of [her] residence * * * [o]nce each year within 10 days of [her] birth date[.]" ORS 163A.020(1)(a)(D).

Defendant's birthday is September 3rd. Prior to 2023, defendant had reported during the 10 days after her birth date each year since she moved to Oregon. In 2023, at all times relevant to this case, defendant lived in Harney

County. She planned on reporting after her birthday, like she had in prior years.

Leading up to her birthday, defendant was mostly homebound. She was in a lot of pain and could not stand or walk for more than 10 minutes. She left the house to go grocery shopping when her boyfriend could drive her, and she used a walker, cane, and wheelchair. Her doctor believed that multiple sclerosis was causing her symptoms. Defendant had scheduled an appointment in Bend on September 4, 2023, with her doctor to get an x-ray to obtain more information about the cause of her symptoms.

On September 1, 2023, defendant travelled from Burns to Brownsville, Oregon, driven by her boyfriend, to help him care for his grandmother. Defendant and her boyfriend left Brownsville on September 2, 2023. They stayed in Bend for two days to celebrate her birthday and to be close to the doctor's office for her September 4 appointment.

On September 4, defendant's doctor took x-rays. The x-rays showed that defendant had spinal stenosis, which is a condition where the spinal column abnormally narrows and, as a result, irritates, pinches, and compresses the spinal cord. Defendant required a wheelchair by the time of her appointment, and her doctor was concerned that her spinal column was cutting off her spinal cord from her brain. The doctor concluded that defendant needed emergency spinal surgery. On September 5, defendant underwent emergency cervical fusion surgery. She was discharged from the hospital in Bend on September 13 at 2:00 p.m. She travelled back to Burns in a medical transport van and arrived after 5:00 p.m. She was on a variety of medications, including narcotics, during her transport, and she still required the use of a wheelchair. The sheriff's office in Burns closes between 4:00 p.m. and 5:00 p.m.

When issued its verdict, the trial court found that defendant "knew she had reporting requirements" and that she "had not registered by the end of the 13th[.]" The trial court also found that defendant was "unable to complete the registration" between when she was admitted to the

hospital on September 5 and the end of the reporting period on September 13:

> "[Defendant] goes on a trip with her boyfriend to see the grandmother. I don't have any doubt either that she has some physical ailments that are significant and that she was admitted into the hospital on the 5th, underwent the surgery, was not released until the 13th.

> "So after she [was] admitted into the hospital, really, she was unable to complete the registration. I think I would factually find that as well because she was in the hospital up until the timeframe in which she could have registered on the 13th."

The court continued on to explain that, under its understanding of the law, defendant's inability to report was not a "complete defense" to the crime because defendant had failed to report during the beginning of the window:

> "However, that's not really the law. The law is she has an opportunity to register within twenty days. She has an obligation to register, and she has an obligation to make sure there aren't barriers that she creates or are created for her to not register.

> "She's leaving town, register that day or all the days beforehand. Register. She just didn't register.

> "And I don't find that the medical appointment is a complete defense to the question of failure to register as a sex offender because of the fact that the statute allows for, and she had knowledge of the fact that she could register ten days before to ten days after her birthday."

## ANALYSIS

The parties agree that the crime of failing to make an annual report, ORS 163A.040(1)(f), occurs at 12:00 a.m. on the eleventh day following the person's birthday. They also agree that a person is not criminally liable for the omission of an act if she is incapable of performing that act. They disagree about how those principles apply in this case. Defendant argues that, because she was physically incapable of reporting on September 13, 2023, she did not commit the crime of failure to make an annual report. The state responds that defendant committed the crime because she

failed to report in the first part of the reporting window, before she was incapacitated, which resulted in her not reporting by the end of the day on September 13, 2023.

The parties' arguments present questions of statutory interpretation. We interpret statutes to identify the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We view the text, in context, and give any relevant legislative history its appropriate weight. *Id*. If the legislative intent "remains unclear after examining text, context, and legislative history," then we "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*. at 172.

We begin with the text of the annual reporting statute. A person who must register as a sex offender must report in person, as relevant to this case, to "the Department of State Police, a city police department or a county sheriff's office, in the county of the person's residence *** [o]nce each year within 10 days of the person's birth date[.]" ORS 163A.020(1)(a)(D). The purpose of requiring a person to register as a sex offender "is to assist law enforcement agencies in preventing future sex offenses." ORS 163A.045(1).

The failure to make an annual report constitutes a crime:

"(1)   A person who is required to report as a sex offender in accordance with the applicable provisions of *** ORS 163.020 *** and who has knowledge of the reporting requirement commits the crime of failure to report as a sex offender if the person:

"*****

"(f)   Fails to make an annual report[.]"

ORS 163A.040.

ORS 163A.020(1)(a)(D) provides that, "[o]nce each year within 10 days of the person's birth date," a person subject to the statute must report in person to one of the law enforcement agencies identified in the statute. The reporting window closes at 12:00 a.m. on the eleventh day after the person's birthday, and the failure to make the annual report becomes a crime under ORS 163A.040(1)(f) only when

the reporting window closes and the person has failed to make the report. *State v. Ribas*, 374 Or 750, 770, 583 P3d 1019 (2026); *see also State v. Fry*, 303 Or App 587, 591, 464 P3d 521 (2020) (explaining that the offense of failure to make an annual report occurs "at a single point in time—on the 11th day after a sex offender's birthday").[2] Thus, in this case, the offense occurred when defendant had not reported by 12:00 a.m. on September 14, 2023.

The other statute at issue here is ORS 161.095(1), which provides that "[t]he minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing." "Conduct" is "an act or omission and its accompanying mental state." ORS 161.085(4). An "omission" is "a failure to perform an act the performance of which is required by law." ORS 161.085(3). As the Supreme Court explained in *Ribas*, when interpreting the reporting requirement for a sex offender's change of residence, ORS 163A.040(1)(d), "a sex offender's failure to report *** is a criminal omission, not an act. That failure amounts to criminal conduct after the 10-day reporting period has elapsed." 374 Or at 770 n 11.

Read together, under ORS 163A.020(1)(a)(D), ORS 163A.040(1)(f), and ORS 161.095(1), a sex offender must have knowledge of the reporting requirement and must voluntarily fail to make the report by 12:00 a.m. on the eleventh day after the person's birthday to commit the crime of failure to make an annual report. That is, the person must be "capable of" reporting and voluntarily fail to do so. ORS 161.095(1).

The state points out that ORS 163A.020(1)(a)(D) requires a sex offender to report "within 10 days of the person's birth date[.]" The state argues that the legislature's use of "within" means that a sex offender must report at some

_____

[2] The Supreme Court in *Ribas* referred to the timing as "midnight on the tenth day" after the event that triggers the reporting requirement. "Midnight" is an ambiguous term that can cause confusion when discussing deadlines. *See Johnson Mobile Park, Inc. v. Schoffstall*, 341 Or App 264, 272-73, 571 P3d 230 (2025) (so stating). From the entirety of Supreme Court's opinion in *Ribas* and the text of the sex offender reporting statutes, it is clear that a person has the entirety of the tenth day after their birthday to report.

point during the 20-day window. Thus, the state reasons, a person who is capable of reporting at any point during the window and voluntarily fails to do so has satisfied the voluntary act requirement in ORS 161.095(1). That is correct as far as it goes, but it does not provide a complete answer to the issue in this case.

The difficulty with the state's argument is that the failure to report at any point within the 20-day window is not a crime. *Ribas*, 374 Or at 770. A person who is capable of reporting during the first 19 days of the 20-day reporting window, and who chooses not to do so, has not committed an offense. If the person reports at 11:59 p.m. on the tenth day after their birthday, they have committed no crime regardless of their voluntary procrastination during the prior 19 days of the reporting window.

That is not to say that the voluntary act or omission must occur precisely at the stroke of midnight. A factfinder could find that a person who voluntarily creates circumstances that lead to their failure to report because they are unable to report at the deadline has performed a voluntary act that caused the failure to report. To provide just one example, imagine a sex offender who lives a 45-minute drive, without traffic, from the sheriff's office where they intend to report in person. The person knows the sheriff's office closes at 5:00 p.m. The person waits until 4:15 p.m. on the tenth day after their birthday to leave their house to make their annual report. Traffic causes the trip to take 60 minutes, and they arrive at the sheriff's office after it has closed. They thus do not make an annual report in person by 12:00 a.m. on the eleventh day after their birthday, in violation of ORS 163A.020(1)(a)(D). That failure constitutes a crime under ORS 163A.040(1)(f) because the person knew they had to report, was capable of reporting by the deadline, but they failed to do so when they voluntarily failed to leave their house early enough to make it to the sheriff's office by 5:00 p.m.[3]

The trial court here observed that a person has an obligation to ensure that there are no obstacles to reporting

---

[3] This is merely a hypothetical to illustrate our understanding of the applicable statutes. We do not mean to suggest that a person must anticipate extreme and unexpected obstacles.

before the close of the annual reporting window. We understand that to reflect the trial court's interpretation of the applicable statutes as imposing criminal liability if the defendant was capable of reporting at any point during the reporting window. That conflicts with ORS 163A.020, ORS 163A.040, and ORS 161.095(1), as we explained above. Properly understood, the statutes require the defendant to be capable of reporting when the deadline expires and to voluntarily fail to do so.

## REMEDY

The trial court's fact findings require us to reverse defendant's conviction instead of reverse and remand for a new trial. We "reverse outright" when a trial court in a bench trial unambiguously finds facts that require a not guilty verdict under a correct understanding of the law. *State v. Barboe*, 253 Or App 367, 379-80, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013). By contrast, if the trial court's fact findings might permit it to find a defendant guilty under a proper understanding of the law (and the error is not harmless), then we reverse and remand for a new trial. *Id*.

In *Barboe*, the state charged the defendant with second-degree theft and fraudulent use of a credit card. *Id*. at 369. The defendant proceeded to a bench trial. *Id*. at 371. The state presented evidence that a person other than the defendant, Mercer, had stolen a credit card from the victim, Muller. *Id*. at 369. Days later, Mercer and the defendant's stepcousin, Samantha, ate at a restaurant where the defendant was a waiter. *Id*. at 369-70. Mercer paid with the stolen credit card and left the defendant an unusually large tip. *Id*. at 370. Mercer signed Muller's name on the receipt. *Id*. The defendant did not verify the signature or the cardholder's identification, contrary to the restaurant's policies. *Id*. The defendant also removed the tip from the till in cash, leaving the restaurant short on cash. *Id*.

Muller discovered his credit card was missing when he learned of the charge from the restaurant. *Id*. He called the police, and an officer interviewed the defendant at the restaurant. *Id*. The defendant said he remembered receiving

the large tip but he denied knowing Mercer or Samantha and he denied knowing that the credit card was stolen. *Id*.

More than one year later, the officer spoke with the defendant again. *Id*. The defendant admitted that Samantha was a relative, that he knew Mercer, and that Mercer had handed him the credit card. *Id*. He maintained that he did not know that the credit card was stolen when he ran it and received the tip. *Id*. The defendant testified, however, that he did not know Mercer when Mercer had paid at the restaurant but that he got to know Mercer after his visit to the restaurant. *Id*.

The trial court acquitted the defendant of second-degree theft and found him guilty of fraudulent use of a credit card. *Id.* at 371. In issuing its verdict, the trial court expressly stated that it had assumed, without deciding, that the defendant did not know Mercer and did not have a legal duty to identify the credit card holder. *Id.* The trial court found the defendant guilty under an aid-and-abet after-the-fact theory for failing to disclose what he knew to the officer when he was first interviewed. *Id*.

We held that the trial court plainly erred because the criminal code does not recognize an aid-and-abet after-the-fact theory of criminal liability. *Id.* at 375-76. We viewed the error as a legal error akin to an erroneous jury instruction. *Id*. We exercised our discretion to correct the error. *Id*.

We then turned to the proper disposition. We explained that we would reverse the defendant's conviction without a remand if the facts as found by the trial court clearly established that defendant was not guilty under a proper understanding of the law:

> "Had the trial court unambiguously found that [the] defendant did not know Mercer [when the defendant ran the credit card], rather than assuming as much for the purposes of applying an erroneous legal premise, or had the court specified when, exactly, [the] defendant 'learned of the theft and misuse of the credit card' (*i.e.*, after speaking with [the officer]), we would be bound to reverse [the] the defendant's conviction outright."

*Id.* at 379 (citing *State v. Gonazlez*, 188 Or App 430, 431, 431 n 1, 71 P3d 573 (2003), and *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003)). The trial court, however, had "merely assumed for the sake of argument" that the defendant did not know Mercer at the time and did not know of the misuse of the credit card until after the fact. *Barboe*, 253 Or App at 380. "Accordingly, because a factual question as to [the] defendant's knowledge at the time of the fraudulent transaction (a material element of the crime of fraudulent use of a credit card) remains unresolved, and the evidence pertaining to that question is sufficient to withstand a motion for judgment of acquittal," we reversed and remanded for a new trial. *Id.* at 380-81 (emphasis omitted).

*Barboe* recognizes that a trial court's fact findings when issuing its verdict in a criminal bench trial have consequences on appeal when we conclude that a trial court erred in instructing itself on the law. When the court's unambiguous fact findings require a not guilty verdict under a correct understanding of the law, then we reverse. When the trial court did not make findings, or when the fact findings are ambiguous, and the evidence would permit a factfinder to find a defendant guilty under a proper understanding of the law, then we reverse and remand for a new trial. *Id.* at 378-79; *see also State v. Langford*, 260 Or App 61, 71, 317 P3d 905 (2013) (citing *Barboe* and explaining that the trial court's erroneous interpretation of an order in a contempt case would result in "outright reversal" if the trial court had resolved the dispositive facts in the defendant's favor, but because the trial court left the dispositive factual issue unanswered, "the proper disposition of the case is to reverse and remand for a new trial").

Here, defendant did not perform a voluntary act or omission under the facts as unambiguously determined by the trial court. The crime occurred at 12:00 a.m. on September 14. *See Ribas*, 374 Or at 770. The trial court found that defendant was unable to report from September 4 to the end of the day on September 13 because she was physically incapacitated. The trial court did not find that defendant should have anticipated the emergency surgery. The trial court did not find that defendant should have

anticipated that she would be incapacitated from September 4 through the end of the day on September 13, and the record would not permit that inference. The court's fact findings required a not guilty verdict under a correct understanding of the law. We thus "reverse outright" instead of reversing and remanding for a new trial. *See Barboe*, 253 Or App at 379-80.

Reversed.