750 January 29, 2026 No. 5

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

v.

EDWARDO LUIS RIBAS,
*Petitioner on Review.*

(CC 19CR38145) (CA A178917) (SC S071443)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 19, 2025.

Peter G. Klym, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Joanna L. Jenkins, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Jon P. Stride, Tonkon Torp LLP, Portland, filed the brief for *amici curiae* The Clif Project and Oregon Voices. Also on the brief was Sasha A. Petrova.

BUSHONG, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Linn County Circuit Court, Brendan J. Kane, Judge. 333 Or App 789, 554 P3d 280 (2024).

**BUSHONG, J.**

The issue in this criminal case is whether the trial court erred in denying defendant's motion for judgment of acquittal on a charge that he had failed to report as a sex offender within 10 days of changing his residence, as required by ORS 163A.040(1)(d). Resolving that issue requires us to decide two legal questions. The first is whether the state is bound by its choice at trial to proceed on a factual theory that defendant had changed his residence *after* the date that defendant had made his required annual report to the Albany police. The second is whether the state was required to prove that defendant violated the reporting requirement on the exact date stated in the indictment.

The Court of Appeals affirmed defendant's conviction. *State v. Ribas*, 333 Or App 789, 554 P3d 280 (2024). The court determined that, as a matter of statutory interpretation, the state was required to prove that defendant committed the violation on the exact date stated in the indictment. Nonetheless, without expressly addressing whether the state was bound by the factual theory that it had pursued at trial, the court cited evidence that defendant had changed his residence before making his annual report and based on that evidence, concluded that there was sufficient evidence in the record to support the jury's conclusion that defendant had failed to report within 10 days of changing his residence. *Id.* at 792-93. We allowed defendant's petition for review.

As we will explain, we conclude that the state is bound by its choice to limit its factual theory to whether defendant had changed his residence *after* making his annual report to the Albany police. We further conclude from the text, context, and legislative history of ORS 163A.040(1)(d) that the passage of 10 days after a change of residence is material to establishing that defendant committed the offense, but the exact date that defendant committed the offense is not a material element. Finally, we conclude that there is evidence in the record—apart from evidence that defendant had changed his residence *before* making his annual report to the Albany police—that would allow a reasonable trier of fact to find that defendant failed to report

within 10 days of changing his residence. Accordingly, we agree with and affirm the decision of the Court of Appeals, albeit for a slightly different reason, that the trial court did not err in denying defendant's motion for judgment of acquittal.

## I.   BACKGROUND

A.   *Overview of Sex Offender Registration Requirements*

Under Oregon law, a person who has been convicted of a "sex crime"[1] is required to register and report periodically as a sex offender. Similar, but not identical, reporting requirements apply to sex offenders depending upon their circumstances. Sex offenders are required to register and report upon release from a correctional facility (ORS 163A.010); after being discharged, released, or placed on probation by a court (ORS 163A.015); upon moving into the state (ORS 163A.020); and after adjudication in a juvenile court (ORS 163A.025).

It is undisputed that defendant is a sex offender who moved to Oregon and, thus, his reporting requirements are governed by ORS 163A.020. That statute requires a registered sex offender to report "[w]ithin 10 days of a change of residence[,]" ORS 163A.020(3)(a)(B), and "[o]nce each year within 10 days of the person's birth date, regardless of whether the person changed residence[,]" ORS 163A.020 (3)(a)(D).[2]

Agencies responsible for registering sex offenders are required to use forms and procedures adopted by the Department of State Police (the department) by administrative rule. ORS 163A.035(1). Under the department's administrative rules, a sex offender is required to report

_____

[1] "Sex crime" is defined to include rape, sodomy, unlawful sexual penetration, sexual abuse, and other offenses. ORS 163A.005(5). It is undisputed that defendant had been convicted of a felony "sex crime" in California in 2008 and thus was required to report as a sex offender after he moved to Oregon.

[2] At the time relevant to this case, those statutes were substantively identical to the current version of the statutes, although the numbering has changed. *See former* ORS 163A.020(3)(a)(B) (2017) (requiring offender to report "within 10 days of a change of residence"); *former* ORS 163A.020(3)(a)(C) (2017) (annual report required "within 10 days of the person's birth date, regardless of whether the person changed residence"). For convenience, we refer in this opinion to the current versions of the applicable statutes.

to a "registering agency" in their county of residence. OAR 257-070-0110(1). A "registering agency" is a local police department, county sheriff's office, or a regional State Police office. OAR 257-070-0015(3). A registering agency is required to complete an "electronic sex offender registration form" using OSP's secure internet website. ORS 257-070-0100(1). The agency must complete "a separate electronic sex offender registration form for each type of sex offender registration event required by law[.]" OAR 257-070-0100(2). Separate registration forms are required even if the "reporting events"—such as the annual report required within 10 days of a reporter's birthday and a change of residence— occur simultaneously. OAR 257-070-0100(3). The offender is required to sign the form by electronic signature or as directed by the registering agency. OAR 257-070-0110(3).

The criminal offense of failing to report as a sex offender is set out in ORS 163A.040.[3] That statute provides, in relevant part, that a person who is required to report as a sex offender, and who has knowledge of the reporting requirement, commits the crime of failing to report as a sex offender if the person fails to report a change of residence, ORS 163A.040(1)(d), or fails to make an annual report, ORS 163A.040(1)(f). The statute also provides that a sex offender commits the crime of failure to report as a sex offender if, in making a required report, a sex offender "[f]ails to provide complete and accurate information[.]" ORS 163A.040(1)(g).

Failing to make the annual report required by ORS 163A.040(1)(f) is a Class A misdemeanor. ORS 163A.040(3). Failing to report a change of residence as required by ORS 163A.040(1)(d) is a Class C felony if the crime for which the

---

[3] ORS 163A.040 was amended in 2019, effective January 1, 2022. Or Laws 2019, ch 430, § 15. As relevant in this case, the 2019 amendments did not change the law that was applicable at the time of defendant's charges in any material respect, although we note that the legislature did change the wording of what is now ORS 163A.040(1)(d). *Former* ORS 163A.040(1)(d) (2017) provided that a person committed the crime of failing to report as a sex offender if the person "fail[ed] to report following a change of residence[.]" That paragraph was amended to provide that a person commits the offense if the person "[m]oves to a new residence and fails to report the move and the person's new address[.]" ORS 163A.040(1)(d). Neither party contends that the legislature intended that amendment to materially change the sex offender reporting requirement that applies in this case. For the sake of convenience and clarity, therefore, we refer to the current version of ORS 163A.040 throughout this opinion.

person is required to report was a felony. ORS 163A.040 (3)(b)(B).

B.  *Historical Facts*

As noted, it is undisputed that defendant was previously convicted of a felony that required him to report as a sex offender. Defendant's birthday is January 30. A few days before his birthday in 2019, defendant went to the Lebanon Police Department to make his annual report. He indicated at that time that he was in the process of moving from his residence in Albany to a new residence in Lebanon, and that he was "in between" those two residences. The Lebanon police told defendant—erroneously—that he had to report in Albany "because that's where you live."[4] Defendant explained that he was in the process of moving to Lebanon, but the police did not complete an electronic report form for defendant to sign. He tried to report again in Lebanon a few days after his birthday and was again told to report in Albany.

On February 15, 2019, defendant reported in person at the Albany police station. He again told the police that he was "in the process" of moving from his Albany address to a new address in Lebanon. Defendant electronically signed an annual report form, which listed the Albany address as both his residence and mailing address and did not include the Lebanon address. Defendant did not sign a separate change of residence form. Because February 15 was more than 10 days after defendant's birthday, the police issued defendant a citation to appear in court for the crime of failing to report within 10 days of his birthday. Defendant asked the arresting officer to use the Lebanon address— the address to which he was "in the process" of moving—for the citation, and the officer complied with that request, listing the Lebanon address in the citation. The district attorney's office then charged defendant by information with the

_____

[4] The statement by the Lebanon police that defendant had to report in Albany because he lived in Albany was erroneous because he was required to report in his *county* of residence, not his *city* of residence. *See former* ORS 163A.020(1)(a) (2017) (sex offender who moves to Oregon is required to report "in the county of the person's residence"); OAR 257-070-0110(1) (sex offenders "shall only register with a registering agency in their county of residence"). Albany and Lebanon are both in Linn County.

misdemeanor offense of failing to report within 10 days of his birthday. The information in that case alleged that the offense had occurred "on or about February 11, 2019." On April 24, 2019, defendant pleaded no contest to that charge. The Linn County Circuit Court accepted the plea, found defendant guilty, and imposed a $300 fine.

On May 25, 2019, an Albany police detective stopped defendant's car because the registration tags on the vehicle were expired. Defendant told the detective that he was on his way home "to Lebanon." She performed a records check and discovered that defendant's most recent sex offender registration still listed an Albany address as his residence. The detective then told defendant that he was under arrest for failing to report within 10 days of changing his residence. Defendant told the detective that he had "already handled" the registration issue and explained his attempts to report in January and February. The detective responded that "the records show" that he still lived at the Albany address, but she had heard that he had not lived there "for over a year."

Defendant then told the detective that he had given the Albany police the Lebanon address when he made his annual report on February 15. He explained that he had told the officers that he still lived at the Albany address but that he intended to move to Lebanon and would register there after he moved. Defendant acknowledged that he had not registered his change of residence after moving to Lebanon, but he claimed that he did not know that he had to report a change of residence. The detective reminded defendant that she "had been told" that defendant had not lived at the Albany address for a year and a half, and he responded, "Of course not." The detective took defendant into custody.

At the jail, on May 26, 2019, defendant signed a change of residence form that listed the Lebanon address as his current residence. The form listed the Albany address as his "old address," indicated that his residence there had ended on October 31, 2017, and stated that he had stopped using that address as his mailing address on February 16, 2019. The form indicated that the "start date" on which the Lebanon address became his residence and mailing address was February 16, 2019. Defendant electronically signed the

form, which stated that he did so "[u]nder penalty of false swearing ORS 162.075 and per [*former*] ORS 163A.040(1)(f) [2017.]"[5]

## C.   *Procedural Facts*

A grand jury indicted defendant on one count of failing to report as a sex offender within 10 days of changing his residence, a Class C felony. The indictment stated:

> "The defendant, on or about February 25, 2019, \*\*\* being a person who was required by law to report in person, as a sex offender \*\*\* within 10 days of a change of residence, having changed residence, and having knowledge of the reporting requirement, did unlawfully fail to report, as required, to an appropriate agency or official; contrary to the statutes and against the peace and dignity of the State of Oregon."

Defendant filed a motion to dismiss the indictment on double jeopardy grounds, contending that his previous prosecution and conviction for the misdemeanor offense of failing to report as a sex offender within 10 days of his birthday constituted former jeopardy that precluded the state from pursuing the new felony charge. Defendant acknowledged that the earlier charge was for failing to file his annual report within 10 days of his birthday and that the new charge was for failing to report within 10 days of changing his residence. However, defendant argued that the new charge was barred by double jeopardy principles because the state "had all the facts necessary" to charge him with failing to report within 10 days of changing his residence at the time it charged him with failing to report within 10 days of his birthday.

In response to defendant's motion to dismiss, the state contended that the new charge was not barred by double jeopardy because the conviction in the previous case was "based on a different violation" than the new charge and because the state could not have charged defendant with a

---

[5] ORS 162.075(1) provides that a person commits the crime of false swearing—a Class A misdemeanor—"if the person makes a false sworn statement or a false unsworn declaration, knowing it to be false." *Former* ORS 163A.040(1)(f) (2017) was renumbered in 2019, effective January 1, 2022. Or Laws 2019, ch 430, § 15. It is now codified at 163A.040(1)(g). As noted, that statute provides that it is a crime if a person reporting as a sex offender "[f]ails to provide complete and accurate information" when reporting.

violation for failing to report his change of residence at that time. The state noted that defendant had listed his Albany address in his February 15 report and claimed that "there was no violation for a change of address that could have been charged" on February 15, 2019, because "defendant had not yet moved to the [Lebanon] address." At the hearing on defendant's motion to dismiss, the state again explained that it could not have charged defendant for failing to report a new address when he reported to the Albany police on February 15 because he had not moved to a new address as of February 15. The trial court denied the motion to dismiss.

At the close of the state's case at trial, defendant moved for a judgment of acquittal, renewing the arguments raised in his pretrial motion to dismiss on double jeopardy grounds. Defendant also contended that he had satisfied his reporting requirement when he reported at the Albany police station on February 15. The court denied defendant's motion and a jury found defendant guilty. He appealed.

On appeal, defendant again argued that he could not be convicted of the offense of failing to report within 10 days of changing his residence because he *did* report to the Albany police on February 15, told the police that he was "in the process" of moving, and gave the police both his old Albany and new Lebanon addresses. Defendant further contended that, even though the indictment alleged that defendant had committed the offense "on or about" February 25, time is a "material element" of this offense within the meaning of that phrase in ORS 135.717 because failure to report is an offense that occurs only "at a single point in time."[6] Thus, defendant contended, the state had to prove that defendant committed the offense of failing to report after changing residence *on* February 25, the date stated in the indictment. Defendant further argued that, because the state's theory at trial was that the defendant had changed his residence sometime *after* February 15, defendant could not have committed the offense *on* February 25 because the 10-day reporting period had not expired as of that date.

---

[6] As discussed more fully below, ORS 135.717 provides that the "precise time at which the offense was committed need not be stated in the accusatory instrument, *** except where the time is a material element in the offense."

The state contended in response that it was not required to prove that the offense occurred *on* February 25. In the state's view, it was sufficient to prove that defendant had changed his residence more than 10 days before he was stopped by the police on May 25 and had not reported as of that date. Thus, the state's position on appeal—consistent with the position that it had taken at trial—was that defendant had changed his address "sometime after" February 15 but more than 10 days before he was stopped on May 25. The state maintained that there was sufficient evidence in the record to support a conviction on that theory.

The Court of Appeals affirmed defendant's conviction, but not for the reasons asserted by the state. The court concluded, following its own precedent, that failure to report "is a crime that 'occurs literally at midnight on the tenth day after a defendant changed his residence.'" *Ribas*, 333 Or App at 792 (quoting *State v. Depeche*, 242 Or App 155, 162-63, 255 P3d 502 (2011) (brackets in *Ribas* omitted)). Failure to report, the court explained, "is not a crime that occurs at any other point in time." *Id.* The court determined that the "precise date of the offense" is therefore a "material element of the crime" because the act charged "is a crime if committed at one time but not if committed at another[.]" *Id.* The court concluded that, in this case, the state was required to prove that, "on February 25, a 10-day period had passed during which defendant [had] failed to report a change of residence." *Id.* at 793. According to the court, that proof could include "evidence that defendant moved *on or before* February 15." *Id.* (emphasis added).

The court then cited a video that had been received in evidence showing the detective's interview with defendant after his May 25 arrest. *Id.* In that interview, the detective told defendant that she had "heard from another resident" that defendant had not lived at the Albany address "for a year and a half." *Id.* In response, defendant stated that he had continued to receive mail at the Albany address but acknowledged that he did not "live there at the time." *Id.* The court concluded that defendant's acknowledgment, viewed in the context of the total evidentiary record, would permit a rational trier of fact to find that defendant had

changed his residence "more than 10 days prior to February 25." *Id.*

Defendant filed a petition for reconsideration, reiterating that, to avoid the double jeopardy issue raised in defendant's motion to dismiss, the state had taken the position at trial that defendant had changed his residence *after* February 15. Defendant contended on reconsideration that the Court of Appeals had relied on a factual theory that the state had disclaimed at trial and adhered to on appeal. The court denied reconsideration, and we allowed review.

## II.   DISCUSSION

On review, defendant acknowledges that the indictment charged defendant with failing to report "on or about" February 25, 2019. Nevertheless, defendant contends, consistent with the Court of Appeals' decision, that the state was required to prove that defendant committed the crime *on* February 25, and that February 25 was more than 10 days after he changed his residence. The state cannot prove those material elements, defendant argues, if the state is bound by its factual theory that defendant had moved from his Albany residence sometime *after* February 15, because the 10-day period for reporting a change of residence had not yet expired on February 25. Defendant further contends that there is no evidence in the record that he changed his residence *after* February 15 and *before* May 15 (10 days before he was stopped by the police on May 25).

In response, the state contends that defendant's argument that the state was required to plead and prove the precise date on which he committed the offense is an unpreserved challenge to the indictment itself. The state further argues that it did not "elect" a factual theory at trial in any way that was binding on the state or the Court of Appeals. On the merits, the state claims that it was not required by Oregon law to prove the precise date on which defendant was in violation of the statute or the date that he changed his residence. The state also contends that there was sufficient evidence in this record to support a finding that defendant had changed his residence from the Albany address to the Lebanon address more than 10 days before he was

stopped by the police on May 25 and that he had failed to report that change of residence.

Resolving this case requires us first to determine whether the state is bound by the factual theory that it had pursued in the trial court. If so, we must interpret the relevant statutes to determine whether the state was required to prove that defendant committed the offense on the date specified in the indictment, February 25, 2019. We interpret the statutes by applying our established methodology, examining the statutory text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Before interpreting the statutes, we first address whether the state is limited to the factual theory it pursued at trial and on appeal.[7]

A.   *The Effect of the State's Choice of Factual Theory*

As noted, in the trial court, after defendant moved to dismiss the charge on double jeopardy grounds, the state represented to the court that it could not have alleged that defendant had changed his residence *on or before* February 15 and that it wished to proceed on the theory that defendant had changed his residence *after* February 15. The state adhered to that theory in the Court of Appeals. On review in this court, the state defends the Court of Appeals' ruling, contending that the state's choice at trial was not an "election" that binds the state or the courts.

We agree that the state's choice was not a formal "election" as our cases have described that term. *See State v. Ashkins*, 357 Or 642, 659, 357 P3d 490 (2015) (state may be required to make an election at trial when it charges a single occurrence, but the evidence permits the jury to find "multiple, separate occurrences" of the offense). Nonetheless, we conclude that the state cannot pursue one factual theory as a basis for opposing a defendant's motion to dismiss at trial, and then, after the trial court denies the motion to dismiss, pursue a different factual theory to uphold a conviction on

_____

[7] Defendant does not dispute that, if the state is not limited to the factual theory it pursued at trial, then there is evidence in the record that would support a finding that he changed his residence *before* February 15, 2019. Thus, he concedes, if the state is not bound by its factual theory, it would be unnecessary for us to interpret the statute.

review in this court. As we will explain, our cases support holding the state to the factual theory that it chose, even if the state has not made a formal "election."

In *State v. Burgess*, 352 Or 499, 287 P3d 1093 (2012), for example, the defendant was charged with first-degree assault. At trial, the state "proceeded solely under the theory that [the] defendant had aided and abetted his codefendants" in assaulting the victim. *Id.* at 501. The jury found the defendant guilty, but the Court of Appeals reversed, holding that the evidence "was not sufficient to support [the] defendant's conviction as an accomplice[.]" *Id.* at 503 (describing Court of Appeals' decision). The Court of Appeals also rejected the state's "separate factual and legal theory that defendant was guilty as a principal" because that was not the state's theory at trial and affirming on that basis "would deprive [the] defendant of 'actual notice' and offend 'overriding principles of due process.'" *Id.* at 503-04 (describing Court of Appeals' decision).

On review in this court, the state again argued that there was sufficient evidence in the record to sustain the defendant's conviction as a principal, not as an accomplice. *Id.* at 504. In response, the defendant argued that, "at trial, the prosecutor 'elected' as a matter of law to confine the state's prosecution under the indictment to accomplice liability, and for that reason the state is barred on appeal from arguing a separate theory of criminal liability." *Id.*

We agreed with the defendant, although we found it unnecessary to determine "whether the state made such an election" in that case. *Id.* Rather, we concluded that, under the circumstances, "it would be fundamentally unfair to [the] defendant to sustain [the] defendant's conviction on a separate factual and legal theory that has been proffered by the state for the first time on appeal." *Id.* We noted that the prosecutor had stated in his opening statement that the defendant "had aided and abetted the commission of [the] codefendant's assault[.]" *Id.* at 505. In response to the defendant's motion for judgment of acquittal, the prosecutor had "argued only that [the] defendant's acts furthered the commission of injuries caused by [the] codefendant." *Id.* And during closing argument, the prosecutor "argued only that

[the] defendant assisted the codefendant in the assault of the victim." *Id.*

Under those circumstances, we explained, requiring the defendant to respond to new factual and legal issues for the first time on appeal "does not comport with a system of appellate review premised on ensuring fairness to an opposing party by permitting the opposing party to respond to a contention and by otherwise not taking the party by surprise." *Id.* at 506. That conclusion was consistent with our decision in an earlier case, *State v. Lonergan*, 344 Or 15, 176 P3d 374 (2008).

The defendant in *Lonergan* was charged with using physical force while he was "escaping from custody," as required for a charge of escape in the second degree under ORS 162.155(1). 344 Or at 17. A police officer had arrested the defendant for unauthorized use of a vehicle, handcuffed him, and walked him to the patrol car. *Id.* When they reached the car, the officer reached into the vehicle for his radio. At that point, the defendant ran away. *Id.* The officer ran after and caught the defendant about 50 to 75 yards from the patrol car, tackling him. *Id.* The defendant resisted and kicked the officer before eventually giving up, and the officer arrested him. *Id.* at 18.

For that conduct, the state charged the defendant with, among other things, second-degree escape in violation of ORS 162.155(1)(a), alleging that the defendant had "use[d] or threaten[ed] to use physical force escaping from custody." *Id.* at 18 (brackets in original). At the conclusion of the state's case at trial, the defendant moved for a judgment of acquittal on that charge, contending that he had not used physical force "escaping from custody" as required by the statute, because he had already escaped before he used physical force in "attempting to avoid recapture[.]" *Id.* The state responded that the defendant's escape was not complete because he had not "gotten away"—the officer was still in pursuit. That is, the state contended, "the escape was still ongoing when [the] defendant used physical force to resist" the officer. *Id.* The trial court agreed with the state and denied the motion, and the defendant was convicted of the charged offense.

On review in this court, we first noted that "escape" is defined in ORS 162.135(5) to mean "the unlawful departure of a person from custody." *Id.* at 20 "Custody" is defined in ORS 162.135(4) as "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest." *Id.* at 20-21. We noted that, when the defendant "stood up and ran, he was no longer under the officer's actual or constructive restraint; he had unlawfully departed from custody." *Id.* at 21. Thus, we observed that the defendant's "actions in running away could not constitute the crime of escape in the second degree" because he did not use or threaten to use physical force in "escaping from custody." *Id.* "It was only later, after the officer had tackled him, that defendant used physical force, kicking the officer." *Id.* At that point, we noted, the defendant "may have been resisting arrest," but he was not "escaping" because he "had already escaped." *Id.*

The state argued that, when the defendant kicked the officer, he "was *escaping*, in the sense that he was trying to make good on his earlier escape." *Id.* at 22 (emphasis in original). In other words, the state argued on appeal—contrary to its argument at trial—that its factual theory was that the defendant was "escaping" within the meaning of ORS 162.155(1)(a) because his actions *after* he had departed from the officer's custody were designed to "make good" on his earlier escape. We rejected that argument, noting that the defendant had "either departed from custody, or he had not" and that "the state * * * cannot have it both ways." *Id.* We agreed with the defendant that "he had *already departed* from custody when he used physical force." *Id.* (emphasis in original). Thus, he "could not have been 'escaping,' as that term is used in ORS 162.155(1)(a)," when he used physical force. *Id.* (emphasis in original). As a result, we held that the trial court had erred in denying the defendant's motion for judgment of acquittal on that charge.

Similarly, in *State v. Hale*, 335 Or 612, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004), the defendant was charged with and convicted of multiple counts of aggravated murder. Some of those counts were based on allegations that the defendant "had committed murder to conceal the crime of third-degree sexual abuse and to conceal the identity of

the perpetrator" of that crime. *Id.* at 617. The defendant filed a demurrer to the indictment, contending that it was "impermissibly vague" because it did not identify the victims or perpetrator of the sexual abuse offenses or where those crimes had been committed. *Id.* at 618. The trial court denied the demurrer, and we affirmed that decision.

In reaching that conclusion, we agreed with the defendant that, "where the record would support more than one incident of third-degree sexual abuse, [the] defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts." *Id.* at 620-21. Procedurally, however, we did not agree that demurrer was "the proper (or only) vehicle for ensuring that [the] defendant obtains" that information. *Id.* at 621. We noted that the defendant "had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter." *Id.*

The approach that this court took in *Burgess*, *Lonergan*, and *Hale* suggests that, on appeal, this court will ordinarily hold the state to the factual theory that it pursued at trial, even if it did not make a formal election. In this case, that means that we must hold the state to the factual theory that it relied on in response to defendant's motion to dismiss. The state argued in response to defendant's motion that defendant had changed residence *after* February 15, 2019. But the state now argues—and the Court of Appeals concluded—that defendant's conviction should be affirmed because there was evidence that he had changed residence *before* February 15, 2019. As in *Lonergan*, the state "cannot have it both ways." And as in *Burgess* and *Hale*, the state is bound by the factual theory it chose at trial, even without making a formal election. We therefore conclude that the state is bound by the factual theory that it chose in opposing defendant's motion to dismiss at trial.

According to defendant, holding the state to that factual theory means that he could not have been in violation *on* February 25 because the 10-day period to report

had not yet elapsed as of that date. Defendant contends that ORS 135.717 required the state to prove that he was in violation *on* February 25, even though the indictment alleged that he violated the reporting requirement "on or about" that date, because time is a material element of the statutes making failure to report a crime, ORS 163A.020(3)(a) and ORS 163A.040(1)(d). Resolving that contention requires us to interpret the relevant statutes. We turn to that statutory interpretation issue.

B.  *Interpreting the Relevant Statutes*

As noted, the text of ORS 163A.040(1)(d) provides that it is a crime for a person who is required to report as a sex offender to fail to report a change of residence. That statute does not specify when the report must be made, but ORS 163A.020(3)(a)(B) makes clear that a sex offender must report "within 10 days of a change of residence[.]" Thus, the event that triggers the reporting requirement is a "change of residence," and a person who is required to report as a sex offender is in violation of the reporting requirement if the person does not report "within 10 days" of a change of residence.

Defendant contends that the Court of Appeals correctly determined that the precise date that defendant committed the offense is a material element of the crime, and, therefore, the state was required to prove that defendant committed the offense *on* February 25, even though the indictment alleged that defendant committed the offense "on or about" that date. We disagree.

As we will explain, time is a material element of the offense of failing to report as a sex offender after a change of residence in one respect—that is, the passage of ten days after a change of residence is a material element—but that does not mean that the state was required to prove that defendant committed that crime on the exact date specified in the indictment. Thus, the Court of Appeals erred in concluding that the state must plead and prove that the defendant committed the offense *on* February 25, 2019.

We begin by examining the text of the relevant statutes in context. Defendant contends that the state was

required to prove that he committed the offense on February 25 because time is a material element of the offense under ORS 135.717, which provides:

> "The precise time at which the offense was committed need not be stated in the accusatory instrument, but it may be alleged to have been committed at any time before the finding thereof and within the time in which an action may be commenced therefor, *except where time is a material element in the offense.*"

(Emphasis added.) Under that statute, the general rule is that the precise date of the offense "need not" be stated in the indictment, subject to an *exception* that applies "where time is a material element" of the offense. The issue here is what that exception means and whether it required the state to prove the exact date that defendant committed the offense.

Defendant argues that "time is a material element" of the offense of failing to report after a change of address, because the failure to report is a crime only if a sex offender changes their residence and does not report within the next 10 days. According to defendant, because "time" is material in that sense, the exception in ORS 135.717 required the state to plead and prove the *exact date* that defendant committed the offense.

But the text of ORS 135.717 makes it clear that time is always material in at least one sense, that is, the accusatory instrument must allege that the offense was committed "within the time in which an action may be commenced" for that offense.[8] Time is also material under the text of the sex offender reporting statutes, because, as noted, a sex offender is required to report within 10 days after changing his residence, ORS 163A.020(3)(a)(B), and his failure to report becomes a crime under ORS 163A.040(1)(d) only at the end of that 10-day period. Thus, the *passage* of 10 days after a change of residence is clearly a material element of this offense. The fact that "time" is material to the offense

---

[8] The time within which an action may be commenced is specified in ORS 131.125. For the felony offense at issue here—a sex offender's failure to report a change of address—the action must be commenced within three years "after [its] commission." ORS 131.125(8)(a). That time starts to run "on the day after the offense is committed." ORS 131.145(1).

in those two ways does not necessarily mean that the state is required to plead and prove that defendant committed the offense only on *the specific date* stated in the indictment.

The context of ORS 135.717 and our cases interpreting that statute reveal that the state may be required to plead and prove the *exact date* that a defendant committed a crime only in very limited circumstances.[9] ORS 132.550(6) requires an indictment to contain, for each count, a statement "that the offense charged therein was committed on, *or on or about*, a designated date, or during a designated period of time." (Emphasis added.) That statute does not specify when an indictment must allege that the defendant committed the charged offense "on" a specific date as opposed to alleging that the defendant committed the offense "on or about" the specified date.[10] But our cases have addressed that question.

The general rule is that, unless required by the statute defining the offense, "the indictment [is] not required to state the precise dates on which the alleged offenses occurred." *State v. Wimber*, 315 Or 103, 110, 843 P2d 424 (1992); *see also State v. Milbradt*, 305 Or 621, 631-32, 756 P2d 620 (1988) (an indictment "need not allege the specific time an offense was committed unless time is a material element of the offense"; time is not a material element of the crimes of rape or sex abuse); *State v. Christy*, 131 Or 314, 317, 282 P 105 (1929) (indictment alleging that defendant committed the crime of larceny of livestock "in June of 1928"

---

[9] Statutory context includes other provisions of the same statute and other related statutes, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), as well as case law interpreting the statute at issue and related statutes, including earlier versions of those statutes, *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000).

[10] As noted, the state also contends that defendant's argument under ORS 135.717 is an unpreserved challenge to the sufficiency of the indictment. But defendant seeks a reversal based on the denial of his motion for judgment of acquittal; he does not challenge the indictment itself. We understand defendant's ORS 135.717 argument as providing support for his sufficiency of the evidence argument. That is, defendant contends that the indictment establishes the legal framework for what the state must prove at trial. Here, although the indictment alleges that defendant committed the offense "on or about" February 25, 2019, defendant contends that the state was required to prove at trial that the offense occurred "on" February 25 and that there is no evidence in the record to meet the state's burden in this case. That argument was adequately preserved for appellate review.

was sufficient because that "was within the time limited by law for commencing [the] action").

For example, in *State v. Long*, 320 Or 361, 885 P2d 696 (1994), the indictment alleged that the defendant committed the crime of sodomy "between June 1, 1982, and April 30, 1983." The prosecutor informed defense counsel before trial that those dates were incorrect, and that the offense had occurred on April 22, 1984. *Id*. at 363. The state did not formally move to amend the indictment, the case proceeded to trial, and the defendant was convicted based on evidence that the crime had occurred on April 22, 1984. *Id*. at 364. On appeal, the defendant contended that the indictment was deficient under ORS 135.717 because time was a material element of the offense. We disagreed, concluding that "it has long been the law in this jurisdiction that the precise time when a criminal offense was committed is not a material element of the crime involved here[.]" 320 Or at 368.

In reaching that conclusion, we observed that, in *State v. Howard*, 214 Or 611, 331 P2d 1116 (1958), this court had described when the exact date that a defendant allegedly committed an offense *would be* a material element of the offense under the exception specified in ORS 135.717. The court in *Long* quoted *Howard*'s explanation that the statutory exception

> "'relates to those crimes in which time is a significant factor, *i.e.*, where the act is a crime if committed at one time but not if committed at some other time. Thus[,] *if a statute should make it a crime to sell liquor on Sunday, time is a material ingredient, because a sale at any other time does not constitute a violation of the statute*. But sodomy is sodomy, irrespective of the precise time when the act is committed.'"

*Long*, 320 Or at 368 (quoting *Howard*, 214 Or at 615 (emphasis added)).

Thus, the exact date that a crime was allegedly committed can be material, as in the "selling liquor on Sunday" example referenced in *Long* and *Howard*. Defendant relies on the statement in *Long* and *Howard* that time is material "where the act is a crime if committed at one time but not if

committed at some other time." *Id.* Under defendant's reasoning, a sex offender's failure to report is a crime that is committed at midnight on the tenth day after a change of residence, but failing to report is *not* a crime within the first 10 days after a change of residence. The Court of Appeals agreed and concluded that the exact date on which the defendant committed the offense is therefore a material element of the offense.

But that reasoning conflates the question of when a defendant *commits* a crime with when a defendant's act or omission amounts to criminal conduct, that is, whether the conduct is a crime at all.[11] The Court of Appeals concluded—applying its precedent in *Depeche*—that a sex offender *commits* the offense of failing to report after a change of residence at midnight on the tenth day after a change of residence. We take no issue with that conclusion—which means, for example, that the statute of limitations for charging that crime begins to run on the next day under ORS 131.145(1), as noted—but that does not mean that a sex offender's failure to report amounts to criminal conduct *only* at midnight on the tenth day after a change of residence and is not a crime at all at any other time.

Rather, a sex offender's failure to report remains a crime after the offender commits it, just as conduct amounting to assault, robbery, theft, and other criminal acts remain crimes after a person commits them. A sex offender's criminal conduct—failing to report after he was legally required to do so—is not analogous to selling liquor on Sunday, that is, it is not the type of conduct that is criminal only if it is committed on that specific day but is not a crime if it is committed on another day. Thus, an allegation that the

---

[11] Under the Criminal Code, criminal liability requires criminal conduct and a culpable mental state. ORS 161.095. Criminal conduct can be either an act or omission. *See* ORS 161.085(4) (defining "conduct" for purposes of the Criminal Code to mean "an act or omission and its accompanying mental state"); ORS 161.085(1) (defining "act" as "a bodily movement"); ORS 161.085(3) (defining "omission" as "a failure to perform an act the performance of which is required by law"). A sex offender's failure to report after changing residence is a criminal omission, not an act. That failure amounts to criminal conduct after the 10-day reporting period has elapsed. That does not mean that defendant committed multiple violations of the statute for every day that he did not report. The statute defines one violation in the singular—"*the* crime of failure to report"—not multiple violations. ORS 163A.040(1) (emphasis added).

defendant committed the crime "on or about" a certain date, as authorized by ORS 132.550(6), is sufficient.

Defendant contends that *State v. Schriber*, 185 Or 615, 205 P2d 149 (1949), supports the conclusion that the exact date that the defendant committed the crime can be a material element of the offense. We agree that the exact date that a defendant commits a crime *can* be a material element of the offense, but *Schriber* does not support the conclusion that the exact date that defendant committed the crime of failing to report after changing his residence is a material element.

The defendant in *Schriber* was convicted of violating an Oregon law that had been enacted to control and eradicate "Bang's disease" in cattle. *Id.* at 622. The indictment alleged that, on April 28, 1948, the defendant had unlawfully "fail[ed] and refuse[d] to slaughter" five cows that had been tested and found to have been infected with Bang's disease. *Id.* The defendant demurred to the indictment on the ground, among others, that the indictment was insufficient, and the trial court sustained the demurrer. *Id.* at 623. The state appealed the trial court's judgment dismissing the indictment.

This court affirmed the trial court's judgment, concluding that the indictment was defective in "one particular[.]" *Id.* at 641. The flaw in the indictment, we explained, was the fact that it did not allege that the infected cows had been *appraised* to determine their value. That allegation was necessary because the applicable statute required an appraisal for any infected cow and it required the cow to be slaughtered "within fifteen (15) days *after the date of the appraisal*[.]" *Id.* at 631 (emphasis added). Thus, we concluded that the offense set forth in the statute "is not adequately described unless the indictment states the existence of facts—the appraisal and the lapse of the prescribed time—without which there could be no violation." *Id.* at 632. As noted, the indictment in that case had alleged that the offense had occurred "on April 28, 1948," but it did not allege that the cows had been appraised or that 15 days had elapsed since the appraisal. For that reason, this court concluded that the indictment was defective, and it affirmed the

trial court's judgment. In so doing, the court did not address whether time—other than "the lapse of the prescribed" 15-day period after the appraisal—was a material element of the offense.

Applying similar reasoning here, the indictment charging defendant with failing to report as a sex offender would be sufficient if it alleged "the existence of facts *** without which there could be no violation"—in this case, defendant's change of residence and the passage of 10 days without a report. As noted, the indictment here alleged that defendant was "a person who was required by law to report in person, as a sex offender *** within 10 days of a change of residence" and that, "having changed residence, and having knowledge of the reporting requirement," he "unlawfully fail[ed] to report[.]" The indictment further alleged that that crime occurred "on or about" February 25, 2019. Those allegations are sufficient to state the facts necessary to establish a violation of ORS 163A.040(1)(d). The state was not required to allege in the indictment that the crime occurred "on" February 25, 2019, nor was the state required to allege the exact date that defendant had changed his residence.

The only remaining question is whether the state is allowed to *prove* a charge alleged to have occurred "on or about" a certain date with evidence that the defendant committed the offense on a date other than the exact date specified. The general rule is that, where an indictment alleges that the defendant committed an offense "on or about" a certain date as authorized by ORS 132.550(6), the state may prove at trial that the defendant committed the crime within a few days or even weeks of the date stated in the indictment, depending on the circumstances. *See State v. Yielding*, 238 Or 419, 424, 395 P2d 172 (1964) (where indictment alleged that the defendant had raped his daughter "on or about" October 6, 1962, evidence that the defendant had committed the crime "[on] several occasions during the last week of September and the first week of October" was sufficient, because "the state is permitted to prove that the crime happened 'on or about' the date alleged in the indictment"); *State v. Shafer*, 222 Or 230, 233-34, 351 P2d 941 (1960) (where indictment alleges that defendant stole a cow "on or

about May 1, 1958," evidence that the cow had been reported missing "some time around the middle of April" and had been found on or "about the first of June" was sufficient); *see also Howard*, 214 Or at 616 (where indictment alleged that the defendant had committed sodomy "on September 27, 1957," and the state elected before trial that defendant had committed sodomy "on or about August 1, 1957," proof that the defendant had committed the act "sometime during the first week of August" was sufficient).

We have never decided the outer limits of an indictment's allegation that the defendant committed an offense "on or about" a certain date. *Yielding*, *Shafer*, and *Howard* suggest that a variance of a few days or even weeks may be permissible. We do not need to decide the limit in this case, because, as we will explain, the evidence supports the conclusion that defendant changed his residence on February 16, 2019, and thus, he committed the offense by failing to report by midnight on February 26. Proof that defendant committed the offense on February 26 when the indictment alleged that he committed it "on or about" February 25 would be fatal to the state's case under our case law only if that one-day variance was prejudicial to the defense.

In *Howard*, this court indicated that the "variance" between the date specified in the indictment and the state's proof at trial "may be fatal [to the state's case] if the defendant's rights are thereby prejudiced." *Id.* at 616. But the court affirmed the defendant's conviction in that case because "the defendant did not establish prejudice" or "explain how his defense was prejudiced" by the variance. *Id.* Here, defendant did not attempt to establish or even claim that his defense was prejudiced by the one-day variance between the date in the indictment and the state's proof at trial. Thus, proof that defendant committed the offense on February 26—not February 25—would be sufficient to sustain the charge.

Defendant contends that the legislative history of the sex offender reporting statutes supports the conclusion that the state had to allege and prove the *exact date* a defendant commits the crime of failing to report. According to defendant, when the legislature amended the sex offender reporting statutes in 2011, it adopted the Court of Appeals'

determination in *Depeche*, 242 Or App 155, that a sex offender commits the offense of failing to report after a change of residence exactly at midnight on the tenth day after a change of residence, and only then. From that, defendant concludes that the state must allege and prove the exact date that a defendant commits the offense and, therefore, the state cannot allege and prove that the defendant committed the crime "on or about" a specific date. Defendant reads far too much into the legislative history.

The legislature first specified the time within which a sex offender had to report after a change of residence in 1991.[12] Or Laws 1991, ch 389, §§ 2, 3. Thus, the history of the 1991 legislation—not the 2011 amendment—is most relevant to determining whether the legislature intended the exact date of the offense to be a material element. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors."). ORS 132.550(6)—which allowed the state to allege that a defendant committed an offense "on or about" a certain date—and ORS 135.717—which established the general rule that the state is not required to allege and prove the exact date of the offense—already existed in 1991. Many of the cases applying those provisions discussed above had already been decided. There is no evidence in the legislative history that the 1991 legislature intended to change the existing rule for this offense and require the state to plead and prove the *exact date* that a sex offender commits the offense.

The 1991 bill as originally proposed created a lifetime registry requirement, an annual reporting requirement, and a requirement that offenders register upon changing their residence, among other things. House Bill (HB) 2407 (1991). Representatives Kevin Mannix and Marie

---

[12] The original sex offender reporting statutes were enacted in 1989. Or Laws 1989, ch 984, §§ 2, 3. Under those laws, sex offenders, upon release from custody or when placed on probation, were required to report their residence address to their parole or probation officers and to report any change of address that occurred thereafter within a five-year period. *Former* ORS 181.518(2) (1989); *former* ORS 181.519(2) (1989). The sex offender registration statutes have been renumbered several times and were renumbered to become part of ORS chapter 163A in 2015.

Bell then proposed amendments to HB 2407 to "give a time frame" for reporting upon release from custody or changing residence. Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2407, Feb 18, 1991, Tape 35, Side A, (discussion between Rep Bell and Rep Mannix). They agreed that 30 days after release or a change of residence would be an appropriate time frame. *Id.*[13] That amendment was approved and became part of the bill that was ultimately enacted by the legislature. Or Laws 1991, ch 389, §§ 2, 3.

In 1997, the legislature amended the statute again, this time to shorten the reporting period from 30 days to 10 days for a change of residence, and to change the annual reporting date from the offender's initial reporting date to the offender's birthday, regardless of whether the offender changed residence. Or Laws 1997, ch 538, §§ 3, 4. The legislative history reflects that the legislature intended the shorter period to conform Oregon's reporting statute to federal law. *See* Tape Recording, Senate Committee on Crime and Corrections, SB 1078, Apr 16, 1997, Tape 72, Side A (testimony of Detective James Ragon, Oregon State Police); Tape Recording, Senate Committee on Crime and Corrections, SB 1078, May 2, 1997, Tape 94, Side A (testimony of Erik Wasmann, Oregon Department of Justice). The discussion focused on shortening the period for making the required reports; there was no indication that the legislature intended to make the state allege and prove the specific date that an offender changed residence or the date that the 10-day period expired as material elements of the offense.

The legislature amended the sex offender registration statutes again in 2011. Or Laws 2011, ch 675, §§ 1-9.

---

[13] The legislature also discussed making failure to report a more serious offense if the underlying crime was a felony. Representative Kelly Clark summarized Mannix's "conceptual proposal" on that point as "creating a two-tiered system under which failure to register within 30 days after [the person moves,] gets [them] a Class C felony if the crime for which [they] were required to register was a felony[] and a Class A misdemeanor if the crime was a misdemeanor." Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2407, Feb 18, 1991, Tape 35, Side A (statement of Rep Clark). Mannix stated that his proposal would make it clear that a sex offender would be required to "separately" make an annual report of their address and "to report their change of address within 30 days of the move, * * * and if you don't do that, you got your Class C felony, Class A misdemeanor as it is in the bill." *Id.* (statement of Rep Mannix).

The original purpose of the bill, House Bill (HB) 3204, was to "close a big gaping loophole" in the registration statutes that allowed sex offenders to avoid registering in Oregon if they worked or attended school in Oregon but resided in another state. Audio Recording, House Committee on Judiciary, HB 3204, Apr 14, 2011, at 00:03:55 (testimony of Rep. Kim Thatcher), https://olis.oregonlegislature.gov (accessed on Jan 26, 2026). During the legislative session, the Court of Appeals decided *Depeche*, 242 Or App 155, and HB 3204 was amended to address that decision.

Aaron Knott, counsel to the Senate Committee on Judiciary, explained that the *Depeche* decision had created a "venue issue" for prosecutors that made it hard for the state to charge offenders who failed to register after changing residence.[14] Audio Recording, Senate Committee on Judiciary, HB 3204, May 24, 2011, at 00:01:13 (statement of Aaron Knott, Committee Counsel), https://olis.oregonlegislature.gov (accessed on Jan 26, 2026). Washington County Deputy District Attorney Gina Skinner explained that "what the court was telling us [in *Depeche*] is that we can only prosecute people when they moved, *if we knew exactly where they were, on the speck of midnight, on the 10th day after they have moved from their last address.*" Audio Recording, Senate Committee on Judiciary, HB 3204, May 24, 2011, at 00:05:33 (testimony of Gina Skinner), https://olis.oregonlegislature.gov (accessed on Jan 26, 2026) (emphasis added). Multnomah County Deputy District Attorney Caroline Wong explained that the bill—which amended existing law to require a sex offender to report "in the county of the person's last reported residence"—would give the state the "firm venue" it needed in response to *Depeche*. Audio Recording, Senate Committee on Judiciary, HB 3204, May 24, 2011, at 00:11:40 (testimony of Caroline Wong), https://olis.oregonlegislature.gov (accessed on Jan 26, 2026). Wong emphasized that "this is *not* a change to *when* a defendant has to register*, simply *where*." *Id*. (emphasis added).

---

[14] The defendant in *Depeche* had moved from his residence in Washington County to live with his mother in Multnomah County. The state charged him in Washington County Circuit Court with failing to report that change of residence. The Court of Appeals reversed the conviction, holding that the offense "occurred at midnight on *** the end of the tenth day following [the] defendant's change of residence *** *and venue is proper in the county in which defendant was at that time*." 242 Or App at 164 (emphasis added).

In making that statement, Wong assumed that the Court of Appeals had correctly interpreted *former* ORS 181.599 (2009) in *Depeche* to mean that the offense of failing to report after changing residence "occurred literally at midnight on the tenth day after [the] defendant changed his residence." *Depeche*, 242 Or App at 163. The legislature approved the proposed amendment without addressing that interpretation. Instead, the amendment addressed the venue issue raised by *Depeche* by adding paragraph (1)(b) to *former* ORS 181.597 (2009) to require a sex offender to make a change of residence report "in the county of the person's last reported residence." Or Laws 2011, ch 675, §3.

In summary, the relevant legislative history confirms that the 1991 amendments were intended to make the expiration of 30 days after a change of residence a material element of the crime of failure to report, but there was no indication that the legislature intended to require the state to plead and prove the *exact date* that an offender committed the offense. The 1997 amendments shortened the 30-day period to 10 days to conform with federal law. The 2011 amendments changed *where* a person who changes residence must report, but it did not change *when* the person must report—within 10 days after a change of residence—nor did it change the general rule that allowed the state to allege and prove that a sex offender committed the offense "on or about" a certain date.[15] The expiration of the 10-day reporting period remained a material element, but nothing in the legislative history suggests that the legislature intended to make the *exact date* on which the offender changes residence or the *exact date* on which the 10-day period expires material elements that the state must allege in an accusatory instrument and prove at trial.

C.   *Application to this Case*

As applied here, the sex offender reporting statutes required the state to prove at trial that defendant had changed his residence, that 10 days had elapsed after that change of residence, and that defendant had not reported

---

[15] The 2011 legislature's assumption that *Depeche* correctly decided *when* a sex offender commits this offense does not mean that the state must plead and prove the exact date that an offender commits the offense.

his change of residence before the expiration of that 10-day period. The state was not required to prove the exact date that defendant changed residence or the exact date that the 10-day reporting period ended. Holding the state to the factual theory it pursued at trial and on appeal, the state was required to prove that defendant changed his residence *after* February 15, 2019, and that ten days passed without him reporting that change of residence. Defendant's conviction must be affirmed on appeal if there is evidence in this record from which a reasonable trier of fact could find those material facts.

We conclude that there is such evidence in this record. Although there is competing evidence in the record about exactly when defendant changed his residence—the record includes evidence indicating that defendant changed his residence *before* February 15[16]—defendant's own statement to the Albany police when he made his annual report on February 15 was that he had not yet moved to the Lebanon address. That is consistent with defendant's testimony that he told the Lebanon police in January and again in February 2019, that he was "in the process" of moving from his Albany address to Lebanon. He told the Albany police the same thing when he made his annual report on February 15. When he was cited on February 15 for failing to make his annual report within 10 days of his birthday, defendant told the police to put his new Lebanon address on the citation. From that evidence, a reasonable trier of fact could infer that defendant changed his residence after February 15, as he stated he intended to do.

When the police stopped defendant on May 25, he told the officer that he was on his way home "to Lebanon." And he then signed a change of residence report form that gave his Lebanon address as his current residence address. That change of address form also stated that the Lebanon

---

[16] For example, when a Lebanon police officer told defendant in May that she had heard that he had not resided at the Albany address for more than a year, he replied, "Of course not." And he signed a change of address form that stated that that Albany address stopped being his residence on October 31, 2017. We focus on the evidence that defendant changed his residence *after* February 15, 2019, because that is consistent with the state's factual theory at trial, and we have already determined that we will hold the state to that theory.

address became his residence *on February 16*.[17] From that evidence, a reasonable trier of fact could find that defendant had changed his residence on February 16, as stated on the form. And it was undisputed that defendant did not report that change of residence until May 26.

That meant that defendant committed the offense of failing to report after a change of residence on midnight on February 26. As explained above, defendant did not claim that the one-day variance between the allegation in the indictment that defendant had committed the offense "on or about" February 25 and the proof at trial that defendant had committed the offense "on" February 26 was prejudicial to his defense. Accordingly, we agree with the Court of Appeals, albeit for slightly different reasons, that the trial court did not err in denying defendant's motion for judgment of acquittal.

We acknowledge that complying with the sex offender reporting requirements can be challenging for persons experiencing housing instability and who, like defendant, may be "in between" residences on occasion.[18] But courts resolve disputes based on the facts and the law and are ill-equipped to solve the policy issues that may be implicated in a particular case. Our opinion today applies the law to the facts in the record and does not attempt to address the broader social concerns highlighted by this case.

### III.  CONCLUSION

The state is bound by the factual theory it pursued at trial and on appeal in this case. That factual theory required the state to prove that defendant changed his residence after February 15, 2019, and violated the reporting requirement by failing to report within 10 days of that change of residence. The passage of 10 days after a sex offender changes residence is a material element of the offense of failing to report as a sex offender, but the exact

---

[17] The change of address form also stated that February 16 was the last date that he had used the Albany address as his mailing address. But the reporting requirement is based on a change of residence, not a change of where a sex offender receives mail.

[18] The administrative rules attempt to address those situations by requiring sex offenders to report their current residential address, or, if the offender does not have a permanent physical address, by reporting "the location where the sex offender can be found on a consistent basis." OAR 257-100-0015(7)(p)(A).

date that an offender changes residence and the exact date that the 10-day reporting period ends are not material elements. Thus, the state was allowed to plead and prove that defendant committed the offense "on or about" February 25, 2019.

The evidence in this record supports the conclusion that defendant changed his residence on February 16, 2019, and thus, that he committed the offense on February 26 when he failed to report his change of residence by midnight on that date. Defendant did not contend or establish that his defense was prejudiced by allowing the state to prove that he committed the offense "on or about" February 25 with evidence establishing that he committed it "on" February 26. Because there was evidence in the record supporting the conclusion that defendant committed the offense "on or about" the date specified in the indictment, the trial court did not err in denying defendant's motion for judgment of acquittal.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.